CASE 87.—ACTION BY JENNIE MOORE AGAINST ED. C. WEBB.—February 18, 1910.

## Webb v. Moore

Appeal from Fulton Circuit Court.

R. J. Bugg, Circuit Judge.

Judgment for plaintiff, defendant appeals.—Affirmed.

1.  Municipal Corporations—Streets—Automobile Accident—Negligence—Failing to Stop Machine.—Plaintiff testified that, while driving an ordinarily gentle horse on a city street, the horse became frightened at defendant's automobile when it was 139 feet from her, and as the automobile approached the horse became more frightened, and, turning quickly, threw plaintiff to the street close to the sidewalk; that the automobile was then 80 feet away, coming toward her, and ran over her, without any attempt being made to stop it. Defendant testified that he was driving at the rate of five or six miles an hour, and first discovered the horse's fright when he was twenty feet away; that the horse turned quickly to the side of the street on which defendant was driving, when defendant turned the machine in on the pavement to avoid a collision; that he was obliged to leave the pavement on account of a house built close thereto, and when

Webb v. Moore.

he returned to the street there was room between the sidewalk and plaintiff's buggy for him to pass, but as he was doing so, plaintiff jumped out and fell immediately in front of the machine, so close that he could not stop, and to avoid running the wheels over her he turned the machine and the body of the car passed over her. Held, that under either version of the affair the jury were authorized to find defendant negligent in failing to stop when he discovered, or should have discovered by ordinary care, the fright of plaintiff's horse.

2. Municipal Corporations—Streets—Automobile — Accident— Care Required.—Where the driver of a team and an automobile are approaching each other on a city street, the legal measure of duty is the same on both; each being required to act with reasonable care to avoid an accident or collision.

3. Municipal Corporations—Streets—Law of the Road—Operation of Motor Vehicles—Statutes.—Ky Stat., section 3739g, regulating the running of motor vehicles on public highways, does not apply to the operation of automobiles in incorporated cities and towns.

4. Continuance—Absence of Witnesses.—Where, in an action for injuries, several physicians, who waited on plaintiff, testified as to the nature and extent of her injuries, and from their evidence it clearly appeared that the injuries received were painful and serious,. and, as some of the physicians testified, permanent, the court did not err in refusing defendant a continuance because of the absence of two nurses, who attended plaintiff during part of the time she was confined to her bed and room on account of the injuries; the court having permitted the evidence of the nurses contained in affidavit for continuance to be read to the jury.

5. Municipal Corporations—Streets—Automobile Accident—Negligence.—Instructions that if defendant negligently ran his automobile over and on plaintiff after defendant had discovered the restive condition of plaintiff's horse, if any, or plaintiff's perilous situation, if any, or might have discovered such condition by the exercise of ordinary care, and by reason of such negligence plaintiff was injured, the jury should find in her favor, but that unless they so believed they should find for defendant, and that they should also find for defendant if plaintiff failed to exercise ordinary care in the management of her horse, for her own safety, and but for such lack of ordinary care the accident would not have occurred, were proper.

6.  Trial—Request to Charge—Instructions Given.—A request to charge, covered by instructions given, may be properly refused.

7.  Appeal and Error—Refusal of Instructions—Prejudice.—Where, in an action for injuries in an automobile accident, no question was raised as to defendant's right to operate his machine on the street, he was not prejudiced by the court's refusal to give part of a request to charge that the owners of automobiles had the same right on the public highway as the owners of other vehicles.

W. J. WEBB and T. N. SMITH for appellant.

HERSCHEL T. SMITH for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

This action was brought by Mrs. Moore against appellant, Webb, to recover damages for personal injuries sustained by her in an automobile accident. On a trial of the case the jury assessed the damages in her favor at $1,250. The errors assigned for reversal are (1) the failure to grant a continuance; (2) refusal to direct a verdict for the appellant; (3) that the verdict was flagrantly against the evidence; and (4) error in giving and refusing instructions.

At the time of the accident Mrs. Moore was driving in an open-top buggy east on Walnut street in the city of Fulton. The horse she was driving was ordinarily gentle and had often passed automobiles without becoming frightened. The appellant, Webb, in his automobile, in company with a friend, was going west on Walnut street. This street at the place of the accident is some 30 feet wide, and Mrs. Moore, when her horse first became frightened was driving on the south side of the street in a slow trot. She testifies that, when she first noticed her horse

becoming frightened at the approaching automobile, it was about 139 feet from her; that she then attempted to hold her horse with the reins, but he became more frightened as the automobile approached, and turned sharply to the north side of the street; that when the horse reached the north side of the street, and close to the sidewalk, he turned quickly to the south, and threw her out of the buggy to the street and close to the sidewalk, causing her to sustain injuries that were painful, serious, and permanent; that when she was thrown to the street the automobile was some 80 feet away, coming toward her, and she was run over by it, she further testified that the person running the automombile could not have avoided discovering the fright of the horse, as there was no obstruction between her horse and the machine at any time after the horse first showed signs of fright, but that the driver of the machine did not stop or attempt in any prudent or reasonable way to relieve the dangerous situation in which she was placed.

Webb testified that he was driving the machine at the rate of 5 or 6 miles an hour, and that when he first discovered the fright of the horse he was about 20 feet from him; that the horse quickly turned to the north side of the street—the side upon which Webb was driving——and when he saw the horse coming in the direction of the machine he at once turned the machine in on the pavement, in order to avoid a collision that seemed to him inevitable if he remained in the street. He further said he was obliged to leave the pavement and return to the street on account of a little house that was built close to the pavement; that when he turned his machine out on the street there was room between the side-

walk and the buggy for him to pass without striking the buggy, but that as he was in the act of passing the buggy Mrs. Moore jumped out of it and fell immediately in front of the machine, and so close to it that he could not stop, and so to avoid running the wheels over her, he turned the machine and the body of the car passed over her.

Accepting Mrs. Moore's version of the affair, there can be no doubt that the jury had the right to believe that Webb was guilty of negligence in failing to stop his machine when he discovered, or should have discovered by the exercise of ordinary care, the frightened condition of the horse she was driving; and, even if Webb's statement of the collision and accident be accepted as true, they yet might well have reached the conclusion that his failure to stop was negligence. Going at the rate of speed that Webb was, he could have stopped his machine at least when he ran it up on the sidewalk, and have thus avoided coming in contact with Mrs. Moore. But, in place of doing this, he endeavored to pass between the buggy and the sidewalk, as in his opinion he might safely have done without injuring Mrs. Moore, if she had remained in the buggy.

It will thus be seen that in this particular case the question of Webb's negligence turned upon the fact whether or not he should have stopped the machine. Evidently the jury reached the conclusion that his failure to stop was negligence, and under the facts stated we cannot say that the jury was not justified in so holding. It is manifest that in cases like this no fixed standard of care can be laid down as a matter of law, nor can it be said what conduct will amount to negligence; and so the only rule that we can safely apply, when the facts authorize the sub-

mission of the case to a jury, is to leave it to them to
determine from all the facts and circumstances
whether or not the driver of the automobile exercised
or failed to exercise, ordinary care to avoid the ac-
cident, and whether or not the injured party ob-
served due care. The legal measure of duty is the
same upon both of the parties. Each must act with
reasonable care to avoid an accident or collision. In
some cases, this degree of care as to the operator
might require the machine to be stopped upon the
first evidence of·danger; in others, it might be neces-
sary to slow down the speed; and yet again, it might
be more prudent to proceed at a high rate of speed,
or not lessen the speed at which the machine is run-
ning. Each case presents different conditions and
situations. What would be ordinary care in one
case might be negligence in another. But, whatever
the condition or situation, the driver of the automo-
bile must at all times and in all places observe ordi-
nary care to avoid injury to persons or travelers
on the highway.

We may here add that, although section 2739g of
the Kentucky Statutes, regulating the running of mo-
tor vehicles on public highways, does not apply to the
operation and use of automobiles in incorporated
cities and towns, it nevertheless lays down rules that
it would be well for operators of motor vehicles to
keep in mind. Thus in section 3 it is provided that:

"Upon approaching a person walking in the road-
way of a public highway, or a horse or other draft
animals, being ridden or driven thereon, a person
operating a motor vehicle shall give warning of its
approach by signaling with a horn, bell, or other de-
vice not calculated to frighten such animal, and use
every reasonable precaution to insure the safety of

such person or animal, and, in the case of horses or other draft animals, to prevent frightening the same, and at once reduce the speed at which such vehicle is being operated and hold same under control, and if such horse or other draft animals appear frightened, to not more than one-half the speed permitted by section two, and bring the same to a stop if apparently necessary for the safety of such person or animal, having due regard to safety of passengers in such motor vehicles.

"Sec. 4. A person operating a motor vehicle shall, at request or on signal by putting up the hand, from a person riding or driving a restive horse or horses, or other draft animals, bring such motor vehicle immediately to a stop if necessary, having due regard for safety of persons, vehicles and animals, and if traveling in the opposite direction, remain stationary so long as may be reasonable to allow such horse or animal to pass, and if traveling in the same direction, use reasonable caution in thereafter passing such horse or animal. Provided, that in case such horse or animal appears badly frightened or he is requested so to do, the person operating such motor vehicle shall, if apparently safer, cause the motor of such vehicle to cease running so long as shall be reasonably necessary to prevent accident and insure the safety of persons, vehicles and animals."

Considering the case upon the testimony of either Mrs. Moore or Webb, there was sufficient evidence to take it to the jury and to sustain the verdict.

Nor did the court err in failing to grant a continuance. The witnesses on account of whose absence a continuance was asked were two nurses, who waited upon and attended to Mrs. Moore during a part of

the time she was confined to her bed and room on account of the injuries she received.  It was stated in the affidavit for a continuance that these nurses would say that Mrs. Moore's ribs were not fractured or injured, and that they could fully and correctly explain the injuries sustained by her. Several doctors who waited on Mrs. Moore were introduced as witnessess and explained to the jury the extent and nature of the injuries she received.  In view of the testimony of these practicing physicians, we are not prepared to say that the court erred in refusing to continue the case because of the absence of the trained nurses; whose evidence was contained in the affidavit the court permitted to be read to the jury. The fact is there was no room to doubt that the injuries received by Mrs. Moore were exceedingly painful and serious, and, as some of the doctors testified, permanent. If the nurses had been present, their evidence would not, in our judgment, have materially conflicted with that of the physicians who attended Mrs. Moore; at least they could not have said that Mrs. Moore was not severely crippled and injured.

The instructions are not open to criticism.  The court told the jury that if they believed from the evidence that Webb negligently and carelessly ran his automobile toward, over, and upon the plaintiff after he had discovered the restive condition of her horse, if any, or the perilous situation of plaintiff, if any, or might have discovered such condition by the exercise of ordinary care, and that by reason of such negligence the plaintiff was injured, they should find for her.  They were further told that, unless they so believed, they should find for the defendant, and were also instructed that if the plaintiff failed to exercise ordinary care in the management of her

horse, or ordinary care for her own safety, and but for which lack of ordinary care the accident would not have occurred, they should find for the defendant. There were only two issues in the case: First, whether or not Webb failed to exercise ordinary care to avoid the injury after discovering the restive condition of Mrs. Moore's horse; and, second, whether or not Mrs. Moore exercised ordinary care for her own safety in the management of her horse. Both of these were fairly submitted to the jury.

Counsel for Webb requested the court to instruct the jury that automobiles have the same right on the public highways as the owners of other vehicles, exercising ordinary care in the management and control of the same, and that Webb was not liable unless he failed to use such care, and by reason thereof Mrs. Moore was injured. This instruction was in substance given to the jury except that part of it saying that the owners of automobiles had the same right on the public highway as the owners of other vehicles. As an abstract proposition of law, owners of motor vehicles have the same right on the public highway as the owners of other vehicles, but manifestly the failure to so instruct the jury did not at all prejudice Webb's case. No question whatever was made in the examination of the witnesses or during the trial as to the right of Webb to operate his machine on the street.

Perceiving no error, the judgment must be affirmed.