[Civ. No. 1260. Third Appellate District.—December 4, 1914.]

## J. F. FURTADO, Respondent, v. ISAAC BIRD, Appellant.

NEGLIGENCE—ACTION FOR DAMAGES—PERSONAL INJURIES—COLLISION BETWEEN HORSEBACK RIDER AND AUTOMOBILE—SUFFICIENCY OF EVIDENCE.—In this action for damages for personal injuries alleged to have been caused by the negligent driving of an automobile by the defendant which collided with the plaintiff who was traveling on horseback along a public highway, it is held that the evidence was sufficient to sustain the implied findings of the jury that the negligence of the defendant was the proximate cause of the injury and that plaintiff was not guilty of contributory negligence; and it is further held that plaintiff's narrative of the facts surrounding and incident to the accident was not so improbable and contrary to the laws of nature as to render it unworthy of belief.

ID.—INSTRUCTIONS—NEGLIGENT ACTS OF DEFENDANT.—In such a case it was not error for the court to modify an instruction proposed by the defendant so as to include negligent acts of the defendant other than running his automobile at such a high rate of speed as to cause the accident.

ID.—INSTRUCTIONS—DUTY OF DEFENDANT TO AVOID ACCIDENT IF POSSIBLE.—In such a case it was the duty of the defendant to avoid the accident if he had the ability to do so; and where the plaintiff testified that he was riding sidewise on his horse at the time of the collision because the stirrups were too short and he could not ride otherwise, it would have been error for the court to have instructed the jury, as requested by the defendant, that if the jury found from the evidence that plaintiff was riding sidewise and by reason thereof he was unable to properly control the actions of his horse and that if he had been riding in the usual manner the accident would not have occurred, the defendant was entitled to a verdict, as this instruction ignored defendant's responsibility for alleged negligence in running his car against plaintiff's horse; and it was proper for the court to modify the proposed instruction by adding "unless defendant knew of the situation of plaintiff and realized that he might inflict injury upon plaintiff by driving his automobile as he did, but nevertheless recklessly took a chance upon so doing while having the ability to avoid the accident, if he had such ability."

ID.—INSTRUCTIONS—CARE REQUIRED OF PERSON HARD OF HEARING.— In such a case, where the undisputed evidence was that plaintiff was partly deaf or hard of hearing, it was not error for the court to modify the following instruction offered by defendant by inserting the italicized words: "The plaintiff in the case was bound to use ordinary care for his own safety while riding along the high-

way and to observe and take notice of all such dangers as could have been discovered by the observation of a person using ordinary care and caution, and possessed of ordinary sight and hearing, *provided he had ordinary hearing,* and if thereby informed of danger to avoid it."

ID.—PERSON HARD OF HEARING—CARE REQUIRED.—In such a case it being admitted that the plaintiff was hard of hearing it would not have been proper to instruct the jury that he was bound to observe and take notice of all such dangers as could have been discovered by a person possessed of ordinary hearing. Although he was bound to use even greater care than a person of good hearing in order to exercise that care which is required of a person having unimpaired faculties, he would not be bound to hear what would have been heard by any one possessing normal faculties.

ID.—KNOWLEDGE BY DEFENDANT OF PLAINTIFF'S DEAFNESS—BURDEN OF PROOF.—In such a case there was no error in modifying the following instruction proposed by the defendant by inserting the italicized words: "I instruct you that if you believe from the evidence that defendant Bird sounded an alarm while approaching plaintiff, and that such alarm would have been heard by a person of ordinary hearing, *and the defendant Bird believed that plaintiff had ordinary hearing,* and that the defendant could not turn to the left and pass plaintiff by reason of the condition of the road, then the defendant had the right to presume that plaintiff would turn to the right upon hearing such alarm and permit defendant to pass; *and* such right so to presume would exist until it became apparent to defendant that plaintiff did not hear him"; and such modification did not cast the burden upon defendant to prove affirmatively that he believed plaintiff had ordinary hearing.

APPEAL from a judgment of the Superior Court of Merced County and from an order refusing a new trial. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

F. G. Ostrander, for Appellant.

F. W. Henderson, for Respondent.

CHIPMAN, P. J.—Action for personal injury. It is alleged in plaintiff's complaint:

"II. That on or about the 24th day of October, 1912, plaintiff was traveling along said county highway in a northerly direction, riding horseback; that at said time he was riding on a walk and traveling from the land rented by him and

lying south and west of said county road, going to the land upon which he was living; that on said day said defendant was traveling on said road in an automobile driven by himself in the same direction as plaintiff; that at said time said defendant overtook plaintiff who was then riding along the westerly side and close to the west line of said highway; that said defendant was driving at a high rate of speed and came suddenly upon plaintiff from the rear without giving any warning whatsoever and did attempt to pass plaintiff; that in attempting to pass plaintiff said defendant negligently steered his machine or allowed it to run into and strike the horse upon which plaintiff was riding. That upon said horse being struck by said machine so operated by defendant, plaintiff was thrown from said horse violently to the ground, suffering a broken arm; . . .

"III. That the road upon which said plaintiff and defendant were traveling on said 24th day of October, 1912, at the place where said injury was inflicted by defendant on plaintiff, so as aforesaid, is at least fifty feet wide, all of which, with the exception of about five feet thereof, has been at all times herein mentioned traveled and adapted to travel by persons either in horse-driven vehicles, horseback or motor vehicles."

In his answer defendant "denies that he was driving his automobile at a high rate of speed, and denies the allegations of plaintiff as to his approaching plaintiff without giving any warning, and denies that he attempted to pass plaintiff or that he negligently steered his machine, or allowed it to run into, or strike the horse upon which plaintiff was riding, and denies that plaintiff's horse was at any time struck by defendant's automobile, and in this respect, alleges that plaintiff negligently caused his horse to collide with defendant's automobile. Defendant further sets up the separate defense of contributory negligence and alleges that by the exercise of proper or ordinary or reasonable care on plaintiff's part, plaintiff could have avoided colliding with defendant's automobile, and that each and all of the injuries alleged in plaintiff's complaint were caused by his failure to exercise proper or ordinary or reasonable care at the time said injuries were received."

The cause was tried by a jury and plaintiff had a verdict for one thousand dollars. Defendant appeals from the judg-

ment and from the order denying his motion for a new trial.

Appellant attacks the implied findings of the jury on the ground that the evidence is insufficient to establish any negligence of defendant either as the proximate cause of the injury or as contributory thereto, and that the evidence is insufficient "to justify the jury in finding that the plaintiff was not guilty of negligence, which was the proximate cause of his injury," or, in other words, the evidence was sufficient to establish plaintiff's contributory negligence.

It appeared that the highway on which the accident occured is fifty feet wide and runs south from the city of Merced; it is graded and used in the center and a roadway is also used on each side of the center grade and the road is fenced on both sides; a berm or bench of earth, about three feet wide, extends from the fence on each side to the sides of the roads; at the time of the accident plaintiff was riding a horse in a northerly direction along the west side of the highway, between the graded part of the road and the fence. He explained in his testimony that he was riding sidewise, because the stirrup straps of the saddle were too short, and was going along slowly, no faster than a walk; he was a farmer and stock raiser and, at the time, was cultivating two places as stated in the complaint and was going to his home from his rented place; he stated on the witness stand that one of his ears had been injured which practically destroyed his hearing in that ear and he said he was "hard of hearing." Plaintiff and defendant were well acquainted with each other and plaintiff testified that he "knew of no reason why he should run into me." Defendant, driving a seven-passenger forty-five horsepower automobile, weighing three thousand two hundred pounds, approached plaintiff from the rear, on this road, and overtook him. A collision occurred and plaintiff was thrown from his horse causing his arm to be broken. There were no witnesses to the accident in the immediate vicinity except the parties themselves and plaintiff's and defendant's account of the circumstances surrounding the collision is irreconcilably conflicting. Recognizing the rule by which we are governed in cases of conflicting evidence, appellant claims that plaintiff's "narrative of the facts, surrounding and incident to the accident is so highly improbable and so contrary to the laws of nature and of probabilities, in fact, of possibilities, such narrative should be rejected." We have

read plaintiff's account very carefully and do not find it of the character described by appellant. The substance of his story may be given in a few words. He testified: "The first I noticed I was riding sideways, and I was just walking my horse along and I just happened to turn my head, just naturally happened to turn my head kind of westerly over my right shoulder (in several other places describing the accident he said left shoulder) and I happened to notice the automobile up to me as near as I can make out, 8 yards or 7 or 8 yards, maybe 9 yards, because I didn't take time, I thought at the time, then I say I noticed it coming at high speed and I thought my life was in danger so I thought all the chance I had in the world. I reined my horse as near the west fence as I could. . . . I no more had my horse turning heading to the west and his automobile run into my horse and threw my horse down, and I was thrown off my horse to the front of the automobile, I should judge 6 or 8 feet. . . . I think the braces of the light was sprung around. The light that was broken was on the left side of the machine. The horse that I have referred to up to the time that I was thrown off had not scared at any time that day. It was the horse my little boy Tony rides. . . . The horse is about 14 years old. I was riding sideways because the stirrups was too short for me and I could not ride otherwise. I have been accustomed to riding horseback for 30 years. . . . The horse was not scared by the automobile coming up behind. . . . It has been his habit not to notice automobiles when they go by at all. . . . I don't swear that the automobile was coming at the rate of 25 miles an hour but it is my judgment it was. My horse was paying no attention to the machine and was walking quietly and Mr. Bird ran upon me at that rate of speed."

Plaintiff's story was that, upon noticing the automobile as he turned his head westerly, looking over his left shoulder, his horse's fore feet were upon the bench of earth next to the fence. In this position the horse's hind feet would be next to the road along which defendant was traveling. His machine was damaged by the breaking and bending of the glass lamp at the left side. Plaintiff's horse was injured "8 or 10 inches above the hock joint" of the left leg. These facts harmonize with and corroborate plaintiff's account of the accident. And these admitted facts are wholly inconsistent with defendant's account.

Defendant testified: "When I was within 200 or 300 feet of him, I sounded the horn; when he turned to the left I wheeled the machine suddenly to the right to get out of his way and as I got the front wheels up on top of the grade just about where the first track would be, he had wheeled his horse toward the fence and his horse got his fore feet up on the berm. The berm is a three-foot space which is not plowed from the fence, out to the side of the road. As his horse got his feet up on there he started to come back. Furtado was sitting sideways and he lost balance on the horse and started to run the horse back and by that time I shut the gasoline off. I just got the machine on top, got the wheels on top of the grade, and I shut the gasoline off and threw on the emergency brakes and the horse ran right back and struck the lamp on the left hand side of the machine. . . . The horse fell back against the machine because it struck the ground just where the grade starts up from the bottom of the ditch and Mr. Furtado was thrown off in the road, the horse fell on his right side." According to defendant's testimony his car was almost at right angles with the road and the front wheels well up on the grade when the horse backed up the grade and in front of the car. It hardly seems probable that both horse and rider would be thrown down in this manner.

Plaintiff may have been mistaken about the speed of the car, although it must have been approaching him with considerable force to knock the horse down. Both parties agree that plaintiff endeavored to escape danger by turning his horse to the fence and under the circumstances it was the natural and safest thing for him to do. It is possible that plaintiff's injury may have been brought about in the way defendant describes the accident. But it is not only possible but probable that it came about as plaintiff testified. In any event, there is nothing in the testimony of plaintiff which would warrant our holding that it was so improbable as to be unworthy of belief.

Two witnesses for plaintiff, who were some distance from the scene of the accident, testified to having observed the car as it approached plaintiff and ran against the horse. Much of defendant's evidence was directed to the testimony of these witnesses to show its improbability owing to physical objects intervening between where they stood and the place of the accident. It is not necessary to determine whether or not

these witnesses were speaking the truth. The jury had plaintiff's and defendant's testimony before them and had a right to accept plaintiff's account without other corroboration than was furnished by the facts and circumstances made to appear.

Defendant testified: "Q. Did you slow up your machine at all after leaving the Stone House? A. Yes, sir. Q. Why? A. Because I saw a man ahead of me on horseback. . . . Q. How far away from you was he when you commenced to slow up? A. About 300 feet. Q. What else did you do in the operation of your machine? A. I just slowed it down, that is all, shut off the gasoline. . . . I began to honk the horn when I was a good deal further away than 300 feet, but he did not make any effort to turn out. I don't think he knew of my approach until I was pretty close to him. From the time I first noticed him he did not do anything to indicate that he knew of my approach until I got within 20 or 30 feet of him and then he turned his horse out to the left. At the same time I was turning to the right." Appellant contends that plaintiff was guilty of contributing to his injury because, being hard of hearing, it was his duty to look back as well as forward and that if he had been doing so this accident would not have occurred. We do not think it was plaintiff's duty to be constantly looking back. Both parties had an equal right to the use of the road but defendant was in the better position to avoid a collision and when he observed that plaintiff appeared not to hear the horn it was defendant's duty to slow down and even to stop his car if necessary to avoid running against plaintiff's horse. Furthermore, he had ample room to turn his car to the right and could thus have avoided the accident. He says he did this but that the horse backed up against the car after it was stopped and caused plaintiff to fall off and the horse to go down also. The jury evidently did not believe this and we cannot say they were unauthorized to reject defendant's story of the accident.

Some objections to the instructions given by the court will be noticed.

Instruction 18, requested by defendant, was properly modified so as to include negligent acts of defendant other than running his automobile at such high rate of speed as to cause the accident. Instruction 19 was that if the jury found from the evidence that plaintiff was riding sidewise and by reason

thereof he was unable to properly control the actions of the horse and that if he had been riding in the usual manner the accident would not have occurred, defendant was entitled to the verdict. This instruction would have been error if given as asked, for it ignores defendant's responsibility for alleged negligence in running his car against plaintiff's horse and would seem rather to excuse it because he was not riding in the usual manner. The court modified the instruction by adding "unless defendant knew of the situation of plaintiff and realized that he might inflict injury upon plaintiff by driving his automobile as he did, but nevertheless recklessly took a chance upon so doing while having the ability to avoid the accident, if he had such ability." Counsel says: "We are frank to confess we do not know just what the court intended the jury to understand by the modification." It seems to us that the intention is not far to seek. If defendant knew how plaintiff was situated and realized that if he, defendant, kept on his course plaintiff might be injured, the fact that he was riding sidewise would not excuse defendant; or, as the court put it, it was defendant's duty "to avoid the accident if he had the ability to do so." Instruction 24, requested by defendant, was given as modified, the italics showing the modification: "The plaintiff in the case was bound to use ordinary care for his own safety while riding along the highway and to observe and take notice of all such dangers as could have been discovered by the observation of a person using ordinary care and caution, and possessed of ordinary sight and hearing, *provided he had ordinary hearing,* and if thereby informed of danger to avoid it." It is insisted that the modification "destroyed the effect of the instruction and told the jury that if plaintiff did not have ordinary hearing he was not required to use ordinary care for his safety." The undisputed evidence was that plaintiff was partly deaf or hard of hearing. In view of this admitted fact it would not have been proper to instruct the jury that he was bound to observe and take notice of all such dangers as could have been discovered by a person possessed of ordinary hearing. He testified that he had heard no warning horn and defendant testified that he appeared not to be aware of his approach. Strictly, he could not be bound to act as a person would have been required to act who heard the warning or was possessed

of ordinary hearing. He was, however, bound to use even greater care than a person of good hearing in order to exercise that care which is required of a person having unimpaired faculties. Still, he would not be bound to hear what would have been heard by any one possessing normal faculties. We do not think the jury could have understood the court to tell them that because plaintiff had not ordinary hearing he was not required to use ordinary care for his safety. That this was his duty was impressed upon the minds of the jury in other instructions very plainly.

The instruction 25 is subjected to the same criticism and need not be further noticed. Instruction 30 was modified as noted by italics: "I instruct you that if you believe from the evidence that defendant Bird sounded an alarm while approaching plaintiff, and that such alarm would have been heard by a person of ordinary hearing, *and the defendant Bird believed that plaintiff had ordinary hearing,* and that the defendant could not turn to the left and pass plaintiff by reason of the condition of the road, then the defendant had the right to presume that plaintiff would turn to the right upon hearing such alarm and permit defendant to pass; *and* such right so to presume would exist until it became apparent to the defendant that plaintiff did not hear him." We cannot see that the modification had the effect to cast the burden upon defendant to "prove affirmatively that he believed plaintiff had ordinary hearing." Defendant testified that he "was not aware that he (plaintiff) was deaf"; that he had conversed with him, "but never observed him holding his hand up to his ear to help his hearing. . . . I did not know he had any trouble with his hearing." The instruction was intended, no doubt, to give the defendant the benefit of the law of the road and we do not think that the modification weakened the instruction in respect of such law. In its entirety it was favorable to defendant. According to defendant's own testimony, he discovered, in ample time to avoid the collision, that his warning was not heard and if heard was not heeded. By his own testimony it appeared that he saw plaintiff turn his horse to the left while he, defendant, was some distance behind plaintiff and he testified that he thereupon turned his car to the right to pass plaintiff. The jury evidently did not accept this latter statement as true.

We discover no prejudicial error in any of the rulings of the court. There was evidence supporting the implied findings of the jury.

The judgment and order are affirmed.

Burnett, J., and Hart, J., concurred.