[Civ. No. 2928. First Appellate District, Division One.—October 28, 1919.]

FRANK G. EDDY, Respondent, v. HARRY STOWE et al., Appellants.

[1] APPEALS—ALTERNATIVE METHOD—EVIDENCE—DUTY TO PRINT IN BRIEFS.—It is not a compliance with the procedure governing appeals under the alternative method for an appellant to print in his opening brief, or in the supplement thereto, only the testimony in the case favorable to his contentions. All the evidence material to the point made on the appeal should be presented in order that the court may consider its weight and sufficiency, and any conflict presented therein. The appellate court is not required to assume the vexatious burden of an examination of the typewritten transcript.

[2] ID.—EFFECT OF 1919 AMENDMENT.—The 1919 amendment to section 953c of the Code of Civil Procedure does not relieve the parties from the necessity of printing in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court, when the appeal is taken under the alternative method.

[3] NEGLIGENCE—COLLISION BETWEEN AUTOMOBILE AND HORSE—VERDICT—EVIDENCE.—In this action for damages for personal injuries alleged to have been sustained by plaintiff as the result of a collision between a horse then being ridden by the plaintiff and an automobile operated by one of the defendants, the verdict was sup-

ported by testimony appearing in the reporter's transcript which warranted the jury in arriving at the conclusion that the accident was caused by the negligence of the defendant automobile driver, and that no actions of the plaintiff in the premises constituted negligence contributing proximately thereto.

[4] ID.—LAW GOVERNING CASE—DUTY OF AUTOMOBILE DRIVER.—Such an action is not governed entirely by the provisions of the Motor Vehicle Act (Stats. 1915, p. 397). While both the plaintiff and the defendant had an equal right to the use of the road, if defendant was in the better position to avoid the collision, it was his duty to take all necessary steps to do so.

[5] ID.—KNOWLEDGE OF FRIGHT OF HORSE—DUTY OF AUTOMOBILE DRIVER.—Where defendant had knowledge that plaintiff's horse was frightened, it was his duty to keep a lookout ahead, and as he approached the horse and rider, to note the movements of the horse, and when he saw, or by the exercise of reasonable caution could have seen, that the horse was under excitement, bucking and manifesting unmistakable fright, ordinary care required him to slow up, stop his machine, or do whatever was reasonably required to relieve plaintiff of his perilous position.

[6] ID.—APPROACH OF FRIGHTENED HORSE—RIGHT OF DRIVER TO PROCEED—DISCRETION—CONSTRUCTION OF MOTOR VEHICLE ACT.—The provision of the Motor Vehicle Act requiring the person driving a motor vehicle on the highway, approaching a horse on which a person is riding, and the horse appearing frightened, to reduce the speed of the car, and, if requested by signal or otherwise, by the rider of such horse, to proceed no farther toward such animal "unless such movement be necessary to avoid accident or injury," until such animal is under the control of its rider, does not vest the driver of the motor vehicle with discretion to determine whether such movement is necessary.

[7] ID.—STANDARD OF CARE—QUESTION FOR JURY.—In such cases no fixed standard of care can be laid down as a matter of law, nor can it be said what conduct will amount to negligence; but, when the facts authorize the submission of the case to a jury, it should be left to them to determine from all the facts and circumstances whether or not the driver of the automobile exercised or failed to exercise ordinary care to avoid the accident, and whether or not the injured party observed due care. The legal measure of duty is the same upon both of the parties. Each must act with reasonable care to avoid an accident or collision.

[8] ID.—COMPLIANCE WITH MOTOR VEHICLE ACT NOT SUFFICENT.—In this action for damages for personal injuries alleged to have been

5. Duty of driver of automobile when horses are encountered on highway, notes, 1 L. R. A. (N. S.) 223; 14 L. R. A. (N. S.) 251; 48 L. R. A. (N. S.) 946.

sustained by plaintiff as the result of a collision between a horse then being ridden by the plaintiff and an automobile operated by one of the defendants, the fact that such defendant may have been proceeding along the highway in full compliance with the provisions of the Motor Vehicle Act did not relieve him of all obligations in the premises; but the jury were justified in finding that he was guilty of negligence in proceeding as he did, and that such negligence was the proximate cause of plaintiff's injuries.

[9] ID.—POSITION OF PLAINTIFF ON LEFT SIDE OF ROAD—NOT NEGLIGENCE PER SE.—The fact that plaintiff was on the left side of the road did not constitute a violation of the statute governing the use of the highway amounting to negligence *per se* where his position in the highway was governed by the actions of his frightened horse, which he was unable to control.

APPEAL from a judgment of the Superior Court of Contra Costa County. A. B. McKenzie, Judge. Affirmed.

The facts are stated in the opinion of the court.

Winfield Dorn, J. E. Rodgers, R. E. Fitzgerald and Morrison, Dunne & Brobeck for Appellants.

Ostrander, Clark & Carey for Respondent.

WASTE, P. J.—This is an appeal from a judgment entered after a verdict of a jury in favor of the plaintiff in the sum of twelve thousand dollars damages, for personal injuries, alleged to have been sustained by respondent, as the result of a collision between a horse, then being ridden by respondent, and an automobile, being operated by appellant Stowe, an employee of the appellant, Mt. Diablo Scenic Boulevard Company.

Appellants' main contention is that the evidence submitted in the court below was insufficient to sustain the verdict against them, but, in fact, affirmatively shows to the contrary. Counsel for appellants have printed in their brief, and in the supplement appended thereto, those portions of the evidence upon which they rely as supporting their position. Respondent insists that the opening brief of appellants should not be considered, claiming that only such extracts from the

9. Violation of statute or ordinance regulating movement of vehicles as affecting violator's right to recover for negligence, note, 12 A. L. R. 458.

evidence are quoted as tend to support the views of the appellants, disregarding the testimony which conflicts therewith. An inspection of the brief convinces us that in a number of instances this is apparently true. Therefore, as was pointed out by the court in *McKinnell* v. *Hansen,* 34 Cal. App. 76–79, [167 Pac. 887], we are not in a position, without examination of the entire transcript, to assume that the quotations in the brief and printed in the supplement are complete as to the points argued, or to conclude without such examination, that the record does not contain the evidence necessary to sustain the verdict of the jury.

[1] It is not a compliance with the procedure governing appeals under the so-called alternative method, for an appellant to print in his opening brief, or in the supplement thereto, only the testimony in the case favorable to his contentions. All the evidence, material to the point made on the appeal, should be presented in order that the court may consider its weight and sufficiency, and any conflict presented therein. Unless the record is thus prepared, the court cannot intelligently pass upon the appeal on its merits without imposing on counsel a further presentation of the record, or assuming the vexatious burden of an examination of the typewritten transcript. This the court is not required to do. (*Pasadena Realty Co.* v. *Clune,* 34 Cal. App. 33, 34, [166 Pac. 1027]; *Marcucci* v. *Vowinckel,* 164 Cal. 693, [130 Pac. 430].)

[2] The recent amendment to the Code of Civil Procedure does not relieve the parties from the necessity of printing in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court, when the appeal is taken under the provisions of sections 953, 953a, 953b, and 953c of that code. When a party fails to comply with that requirement the court hearing the appeal shall direct such party to print and serve on the adverse party, and file with it, a supplement to his brief in which shall be set forth in full that portion of the record relied on by such party and not printed in any former brief. (Sec. 953c of the Code of Civil Procedure, as amended 1919, [Stats. 1919, p. 261].) In the instant case, in order not to delay the determination of the appeal, otherwise ready for consideration, we forbear from exacting compliance with the statute.

[3] We have, therefore, very carefully read the evidence, relied upon by appellant, and the other testimony appearing in the reporter's transcript bearing upon the same matters. From such examination we are convinced that the verdict is supported by evidence, which warranted the jury in arriving at the conclusion that the accident was caused by the negligence of appellant Stowe, and that no actions of the respondent in the premises constituted negligence contributing proximately thereto.

Plaintiff, who is a skillful rider and an experienced stockman, and known as such to appellant Stowe, was riding a young horse he was engaged in breaking on the highway between Danville and Mt. Diablo Park. The horse became frightened at a passing motorcycle, began rearing and bucking, and attempted to jump over the fence on the side of the highway. One of plaintiff's chaparejos caught on the barbed wire, which threw his foot out of the stirrup. While the plaintiff was engaged in subduing the horse an automobile approached, the occupants of which called to him. As it passed he saw the automobile, driven by appellant Stowe, coming from the other direction, "driving pretty fast," as far as plaintiff's knowledge of automobiles allowed him to judge. The horse, as described by plaintiff, was then "frightened and mad. . . . The horse shied agin the fence and I dug him back again . . . then he lunged, tried to get out of my hold, you see, as a horse will do, and when he was about in the center of the road . . . the horse was still rearing and lunging, and I saw the other machine [driven by Stowe], and I thought the horse would go past him, or past my own side of the road. At that time the horse just reared and the next thing I heard was glass flying, and my lights was out, like that." Plaintiff, upon cross-examination, testified that, as the automobile, driven by appellant Stowe, was approaching, his horse continued beyond his control to such an extent that while he could prevent it from running away, he could not otherwise direct its movements other than to allow it to rear and plunge. That such was the fact is fully corroborated by the testimony of other witnesses.

Appellant Stowe, by his own testimony, admittedly saw respondent before he, Stowe, met and passed the automobile which was going in the opposite direction. That distance was variously estimated from one hundred to two hundred feet.

There was nothing to prevent his having a clear and unobstructed view of the horse and the rider from that time until the collision occurred. After the other automobile passed the horse, Stowe observed, so he testified, that it was "frightened, jumping around, and crowding over toward the fence." From that moment, he contends, he did not see the horse, although he admitted that he knew the horse was there. According to his testimony, when he met the other automobile, he was going twenty miles an hour, and then "unconsciously slackened down to about eighteen," as the two machines passed. He made no effort to stop his car until after the collision. From the evidence, somewhat uncertain by reason of the references to the diagram of the scene of the accident, used at the trial, and which is not a part of the record, it appears that Stowe turned neither to the right nor to the left, in order to avoid the plaintiff's bucking horse. The collision took place on the edge of the strip of macadam which was in the center of the roadway, which, in turn, was forty-two feet wide between fences. The plaintiff was thrown from his horse and suffered very serious injuries, the gravity of which are not disputed by appellant, and for which the jury awarded the large amount of damages already alluded to.

It is appellant's contention that the case at issue is governed entirely by statutory law, as found in the act regulating the use and operation of vehicles upon public highways. (Stats. 1915, p. 397.) Pertinent portions thereof are, according to appellant, section 20, paragraph "a," which requires that the driver or operatior of any vehicle, in or upon any public highway, shall drive and operate such vehicle in a careful manner with due regard for the safety and convenience of pedestrians and of all other vehicles or traffic upon such highway, "and wherever practicable, shall travel on the right-hand side of such highway"; and section 20, paragraph "h," which requires that "every person having control or charge of any motor vehicle or other vehicle upon any public highway, and approaching any vehicle drawn by a horse or horses, or any horse upon which any person is riding, shall operate, manage and control such motor vehicle or other vehicle in such manner as to exercise every reasonable precaution to prevent the frightening of any such horse or horses, and to insure the safety and protection of any person riding or driving the same; and if such horse or horses appear frightened the per-

son in control of such motor vehicle or other vehicle shall reduce its speed, and if requested by signal or otherwise by the driver or rider of such horse or horses shall not proceed further toward such animal or animals unless such movement be necessary to avoid accident or injury, until such animal or animals be under the control of the driver or rider thereof.''

[4] We do not think the case is governed entirely by the statute in question. Both Eddy and Stowe had an equal right to the use of the road, but if defendant was in the better position to avoid the collision, it was his duty to take all necessary steps to do so, one of them being his duty to slow down and even to stop his car, if necessary, to avoid running against plaintiff's horse. (*Furtado* v. *Bird,* 26 Cal. App. 152–158, [146 Pac. 58].) [5] With the knowledge that plaintiff's horse was frightened, it was appellant Stowe's duty to keep a lookout ahead, and as he approached the horse and rider, to note the movements of the horse, and when he saw, or by the exercise of reasonable caution could have seen, that the horse was under excitement, bucking and manifesting unmistakable fright, ordinary care required him to slow up, stop his machine, or do whatever was reasonably required to relieve respondent of his perilous position. (*McIntyre* v. *Orner*, 166 Ind. 57, 63, [117 Am. St. Rep. 359, 8 Ann. Cas. 1087, 4 L. R. A. (N. S.) 1136, 76 N. E. 750]; *Ward* v. *Meredith*, 220 Ill. 66, [77 N. E. 118]; Huddy on Automobiles, 4th ed., secs. 128a, 129.)

There is no merit in the contention that appellant Stowe was relieved from negligence in the matter because of the fact that plaintiff, busily engaged, as he was, in subduing a frightened, bucking horse, did not signal him to stop as he approached. By his own testimony Stowe was not looking for a signal, because he ''didn't feel that he [plaintiff] had his hands full with the horse,'' and ''he [plaintiff] was the last man in the world to signal anybody to stop if his horse was unmanageable.''

[6] The Motor Vehicle Act (section 20 [h], *supra*), as before noted, requires the person driving a motor vehicle on the highway, approaching a horse on which a person is riding, and the horse appear frightened, to reduce the speed of the car, and, if requested by signal or otherwise, by the rider of such horse, to proceed no farther toward such animal, ''un-

less such movement be necessary to avoid accident or injury,'' until such animal is under the control of its rider.

Appellants contend, therefore, that under this provision the question whether or not under the given set of circumstances it was the duty of Stowe to stop his machine, in order to avoid the accident, was one to be answered by him, in the exercise of reasonable discretion, and failure to stop can be determined to be negligence only in the event of a clear showing of an abuse of such discretion. They quote, in support of this contention, Babbitt on ''The Law Applied to Motor Vehicles'' (second edition), section 1122, viz.:

''Under the language of the act, in some of the states the vehicle is required to remain stationary. 'unless forward movement be necessary to avoid accident or injury.' In such cases it has been held that it is for the chauffeur to determine whether such movement is necessary. His conclusion is controlling, unless he acts unreasonably or in bad faith, and will not be open to question afterward.''

An examination of the two authorities cited by the learned author of the work in question does not warrant an unqualified application of his language to the case at bar. In *McCummins* v. *State,* 132 Wis. 236, [112 N. W. 25], the court was construing the section of the Motor Vehicle Act of Wisconsin, [Laws 1905, c. 305, sec. 4], which provided that the driver of the motor vehicle, upon signal or sign of distress from the driver, or rider, of a frightened horse, should stop and ''remain stationary, unless a movement forward shall be *deemed* necessary to avoid accident, etc.'' (The italics are ours.) The court, in brief, held ''that the word 'deemed,' as used in this connection, conveys the idea that the standard upon which the operator is to act rests in his judgment.'' The word ''deemed'' does not occur in the California statute, and, furthermore, the court in that case said ''This, of course, implies that he must act reasonably under the conditions presented to him.'' *McIntyre* v. *Orner, supra,* also cited by Babbitt, has no reference to the language of the statute imputed to it. On the facts, however, the court (at page 63 of 166 Ind., [117 Am. St. Rep. 359, 8 Ann. Cas. 1087, 4 L. R. A. (N. S.) 1130, 76 N. E. 752]) used the language we have already quoted in substance.

What appears to us to be a correct statement of the law in such cases is to be found in *Webb* v. *Moore,* 136 Ky. 708,

[125 S. W. 152] (also quoted in Babbitt), wherein the court said:

[7] "It is manifest that in cases like this no fixed standard of care can be laid down as a matter of law, nor can it be said what conduct will amount to negligence; and so the only rule that we can safely apply, when the facts authorize the submission of the case to a jury, is to leave it to them to determine from all the facts and circumstances whether or not the driver of the automobile exercised or failed to exercise ordinary care to avoid the accident, and whether or not the injured party observed due care. The legal measure of duty is the same upon both of the parties. Each must act with reasonable care to avoid an accident or collision. In some cases this degree of care as to the operator might require the machine to be stopped upon the first evidence of danger; in others it might be necessary to slow down the speed, and yet again, it might be more prudent to proceed at a high rate of speed, or not lessen the speed at which the machine is running. Each case presents different conditions and situations. What would be ordinary care in one case might be negligence in another. But, whatever the condition or situation, the driver of the automobile must, at all times and in all places, observe ordinary care to avoid injury to persons or travelers on the highway."

[8] There is much in the record to indicate that the appellant Stowe was at fault in this matter. While he may have been proceeding along the highway in full compliance with the provisions of the Motor Vehicle Act, he was not thereby relieved of all obligations in the premises. He was approaching a person whom he admits he saw to be riding a frightened horse. He saw the horse and rider at a distance sufficiently great to enable him to have stopped, if need be, in order to avoid an accident. We cannot but feel that the jury was correct in finding that he was guilty of negligence in proceeding as he did, and that such negligence was the proximate cause of plaintiff's injuries. Appellant, who was well acquainted with the plaintiff, and his ability as a rider, and his familiarity with horses, believed, according to his testimony, already referred to, that plaintiff would sufficiently subdue the horse to allow the automobile to pass safely on some portion of the wide highway. Consequently, he proceeded with no thought of taking precautions to avoid the injury

which resulted. This is borne out by the testimony to the effect that shortly after the accident Stowe stated to witness Gould, in effect, that he (Stowe) "was not going so fast, but was hitting it right along; that he saw the horse; that he looked like he was going to jump the fence, getting away from the other machine, and that he took a chance, and thought that he could slip by."

[9] It appears that respondent, in order to avoid the motorcycle which frightened his horse, abandoned the macadamized portion of the road, and turned off to his left, which placed him upon what is sometimes denominated the "wrong side of the road." He was endeavoring to get the horse to cross the road to the right side as Stowe approached. Appellant contends that because of this fact respondent was on the left side of the road and was guilty of negligence *per se,* to wit, the violation of the statute governing the use of public highways (Stats. 1915, p. 397, *supra*), which contributed to his injury. There is no merit in this contention, for, as before stated, both parties had an equal right to the use of the road. (*Furtado* v. *Bird, supra.*) Respondent's position in the highway was governed by the actions of his frightened horse, which he was unable to control, as Stowe approached, of which Stowe had ample notice. This did not constitute a violation of the statute governing the use of the highway amounting to negligence *per se,* as claimed by appellants.

The judgment is affirmed.

Kerrigan, J., and Richards, J., concurred.