[Civ. No. 6411.   Third Appellate District.—January 23, 1941.]

MARY HONTOU, a Minor, etc., et al., Appellants, v. C. D. ORVIS, Respondent.

Burke & Rawles and John B. Harman for Appellants.

Honey & Mayall and James E. Busch for Respondent.

TUTTLE, J.—This action was brought to recover damages arising out of a collision between an automobile and a horse which Frank Hontou was riding. The latter died as a result of injuries received, and the surviving widow and four children are plaintiffs herein. The trial was by the court, and findings were entered in favor of respondent upon all issues. The appeal is taken from the judgment rendered pursuant to the findings.

Viewing the facts in a light most favorable to respondent, as we are bound to do on appeal, in support of the judgment, the record shows the following circumstances: On the morning of October 25, 1938, the deceased was riding his horse northerly along the right side of the right-of-way of State Highway No. 101, and at a point about a mile from the city of Ukiah. The time was 8:50 A. M., and the weather was dry and clear. Respondent was driving his automobile on the right side of said highway, northerly, and therefore approached the horse from the rear. He was proceeding at a speed of about 45 miles per hour. The first time that he saw the horse it was ten feet or more off the paved portion, and about 20 feet away. He saw the horse jumping and plunging. It finally plunged over on the highway and against the right front of his car. He was unable to turn out to the left because of a passing car. The deceased was thrown from his horse and received injuries which resulted in his death. The foregoing is a summary of respondent's testimony. His version of the occurrence is corroborated by the driver of a school bus, who saw the entire affair, as he was approaching the scene about one hundred yards behind respondent. We quote a portion of his testimony:

"A. Well, I was just—oh, about 100 yards from where this accident happened, and I seen the horse going alongside of the road; I don't know how long I had seen the horse before the accident happened, but the horse evidently just broke and run, run kind of catty-cornered across the road like it was trying to head the car off, and from what I seen, why the horse hit the front fender with its front legs, and its rear end flew around and hit the door of the car, and at that time Mr. Hontou left the horse and went clear over the top of the car. . . . Q. And when you first saw the horse and rider at the side of the road, was the horse acting up in any way? A. I couldn't tell you that; I didn't pay any attention to the horse. I seen the horse. I don't generally pay much attention to them until I get up closer to them. Q. Was there anything unusual about the horse that attracted your attention? A. Not that I noticed. Q. When you say when he acted as though he was trying to head the car, did he rear up or go around? A. He came out of there just like he was either scared or else like a horse does when you spur them and try to head a steer or something, he went out of there as hard as he could go, catty-cornered. Q. Where he started this wheeling motion, was that from out on the dirt? A. Out on the edge of the road, I don't know where it was, on the dirt, or where it was, but by the side of the road was where the horse was when I first seen it. Q. That motion from there over to the car, was that a rapid motion? A. Yes, very rapid."

It is the contention of appellants that respondent was guilty of negligence as a matter of law; hence the finding that he was free from negligence was not supported by the evidence. They point out that he testified that he did not see the horse and rider until he was within twenty feet of them. They urge that as he did not see the horse *before* he was within twenty feet of it, he was guilty of negligence, under the rule that—

"All drivers of vehicles on a public highway are required by law to keep a vigilant lookout ahead, so as to avoid, if reasonably possible, a collision with any other vehicle or person lawfully upon such highway. Failure to keep such lookout, or failure to see that which may be readily seen, if the driver is looking, would constitute negligence as a matter of law." (*Berlin* v. *Violett*, 129 Cal. App. 337–340 [18 Pac. (2d) 737].)

The foregoing statement of the law is approved in *Holibaugh* v. *Ito,* 21 Cal. App. (2d) 480 [69 Pac. (2d) 871]. They also rely upon section 532 of the Vehicle Code, which reads as follows:

"The driver of any vehicle approaching any horse drawn vehicle, any ridden animal or any live stock shall exercise proper control of his vehicle and shall reduce speed or stop as may appear necessary or as may be requested by any person driving or riding any animal or by any person in charge of any such live stock, in order to avoid frightening and to safeguard any such animal or live stock, and to insure the safety of any person driving or riding such animal, or in charge of such live stock."

■ In respect to the first contention, respondent states that appellants start with an incorrect premise, in that they assume that the horse was upon the highway at all times. The criticism is well taken. We must take the evidence most favorable to the prevailing party, and, as we have seen, there is testimony to the effect that deceased was riding ten feet *off* the highway, in the dirt. While it was unquestionably the duty of respondent to keep a vigilant lookout ahead on the highway on which he was traveling, we know of no rule or law which requires a driver to continually scan the entire right-of-way, at the expense of keeping a proper lookout on the portion of the road on which he was traveling. To require the driver to take his eyes off the highway and cover the range of the entire right-of-way would be to invite disaster. None of the cases cited by appellants involves the failure to see objects which were not upon the highway. ■ Furthermore, in such cases the question of whether one who looks, sees all that he should have seen, is one of fact for the court or jury. (*Prato* v. *Snyder,* 12 Cal. App. (2d) 88 [55 Pac. (2d) 255].) Here, the court found, impliedly, that respondent saw all he should have seen, the horse not being on the highway, but ten feet to the side thereof, and the question as to whether or not he was negligent, was one solely for the trial court.

■ As to the second contention of appellants, relating to section 532 of the Vehicle Code, it was a question for the trial court as to whether it was "necessary" for respondent to reduce his speed or stop. He was traveling at a lawful rate of speed, and the horse was some distance off the highway.

We do not believe that it can be said, as a matter of law, that said section was violated, and even if it had been, it does not follow that defendant would be liable. It must be further proved that the violation of the statute contributed directly to the injury. (19 Cal. Jur., p. 636, sec. 67.) That, also, was a fact for the trial court, whose finding adverse to plaintiffs must be sustained.

Appellants refer to the cases of *Furtado* v. *Bird,* 26 Cal. App. 152 [146 Pac. 58], and *Eddy* v. *Stowe,* 43 Cal. App. 789 [185 Pac. 1024], as being the only two cases they could find which involved collisions between automobiles and persons on horseback. Neither of these cases is of any assistance in the instant case. In the Furtado case, the evidence showed that the defendant was driving at an excessive rate of speed, and ran down the plaintiff when he was riding a horse completely off the main traveled portion of the highway, and on the side of the road. In the instant case, just the reverse is true: the horse and rider ran from a position of safety on the side of the road, onto the highway into defendant's car.

The discussion of the facts in the case of *Eddy* v. *Stowe* contained in appellants' brief, clearly shows the inapplicability of this case, as it appeared that the drivers of the offending vehicles knew that the plaintiff's horse was frightened, in time to have slowed down, stopped, or otherwise avoid a collision. In the instant case the facts show conclusively that from the time decedent's horse went out of control, it bolted and ran across the highway and into the side of defendant's car with such rapidity as to make any attempt on defendant's part to avoid the animal an impossibility.

The third contention made by appellants is that the trial court did not have the power, on motion for new trial, to set aside the findings and adopt new findings in lieu thereof. The general power to thus proceed is given under section 662, Code of Civil Procedure. Appellants state that they merely moved for a new trial, and did not ask the court to set aside the findings and adopt other findings. The point is without merit. The statute gives the power when a motion for new trial is made by either party. The right to adopt other findings thereupon arises, and is not dependent upon any other or further application to the court. Appellants contend, however, that the *second* findings were more favorable to de-

fendant than the first. Assuming that this is true, there is nothing in the section which restricts the action of the trial court or which limits the scope of the second findings. The statute is a remedial one, and should be liberally construed. In 8 California Jurisprudence Supplement, page 544, section 103a, it is said:

"The statute constitutes a grant of power to the trial court to correct judicial errors, to readjudicate the case on the facts, and to make a new decision and judgment. In proper circumstances, the trial court may change or add to its findings of fact, modify the judgment, grant a new trial as to part of the issues, or reopen the case for further proceedings."

In *Spier* v. *Lang,* 4 Cal. (2d) 711–714 [53 Pac. (2d) 138], it is stated:

"The obvious purpose of the statute, discerned from the language employed, was to give to the court on denying the motion for a new trial the broad power to change its findings and to modify its judgment and thus avoid the necessity of a new trial. This was to subserve the ends of justice and to prevent unnecessary delays in cases where the court deemed itself mistaken as to its previous view of the evidence or in the application thereto of the law. Where the question of the extent of the power of the court under the section has previously been considered, the reviewing courts have felt no hesitancy in holding that the trial court had such a broad power under the provisions of the section."

The case of *Del Barrio* v. *Sherman,* 16 Cal. App. (2d) 407 [60 Pac. (2d) 559], relied upon by appellants, holds that where the defendant alone moves for a new trial in respect to a money judgment, the trial court has no power under said section to increase, by modification, the amount of such *judgment.* No authorities are there cited which thus restrict and limit the power of the court. The statute makes no limitation of the power. The case can, however, be distinguished upon the ground that the second *judgment* imposes a more onerous burden upon plaintiff than the first. Here, the judgments are identical—"that plaintiff take nothing".

The judgment is affirmed.

Pullen, P. J., and Thompson, J., concurred.