[Civ. No. 316. Fourth Appellate District.—February 27, 1931.]

JAMES I. GRAVES et al., Respondents, v. KERN COUNTY TRANSPORTATION CORPORATION et al., Appellants.

262

B. P. Gibbs, Theodore Hale and Siemon & Garber for Appellants.

Rowen Irwin and Aldrich & Mack for Respondents.

BARNARD, P. J.—This is an action in which the plaintiffs seek to recover damages for the death of their son, caused by a motor vehicle accident. The accident occurred in the city of Bakersfield, in a subway under the Santa Fe Railroad tracks, on Union Avenue, a paved street which runs north and south. The bottom of the subway is flat for eighty feet, and the ascent on either side is 300 feet long from the level of the bottom to the street level above, the grade on these ascents being about five per cent. At a point on the east side of the north incline, about 100 feet up the slope from the beginning of the ascent and twelve feet east of the east edge of the pavement, on the night here in question, there was a hole about four feet long, north and south, three feet wide and one and one-half feet deep. The twelve feet from the pavement to this hole was a gradual rise and from the hole on, the slope of

the bank sharply ascended to the ground level. The hole was, in fact, one in the bank, having been made by the water washing part of the bank away at that point. This accident occurred about 8 o'clock in the evening of September 8, 1929, while the pavement was wet from a recent rain. One Walter L. Lawrence, an automobile salesman, was demonstrating a Hudson automobile to plaintiffs' son, and they were accompanied by five mutual friends. The Hudson car was proceeding north on Union Avenue and the testimony shows it stalled about five blocks south of the subway, but was again started in some manner not appearing from the evidence. About the time it reached the entrance to the subway, the car again stalled. Five of the men, including Graves and Lawrence, alighted. Lawrence testified that he told the driver that they would give the car a push and if it started to run, to pull up on the hill on the other side and wait for them. The car was given a push and the motor started. One witness testified that the motor started before the car reached the entrance to the subway, and that it entered the subway on its own power. Another witness thought the engine may not have started until the car was ten or twelve feet along the descending slope. The car stalled again in the bottom of the subway, and the five men walked down to it and attempted to push it on through. However, one of the men, McBride, went back about thirty feet for the purpose of flagging approaching cars. He succeeded in flagging three cars, one of which came to a stop and the other two slowed down and went around the stalled car. Subsequently a stage, owned by one of the defendants and driven by the other, entered the subway from the south. McBride tried to flag this stage but when he saw it was not going to stop, he shouted a warning to the others that they were going to be hit. Two cars with bright headlights were entering the north incline of the subway, so that the stage could not pass to the left of the Hudson. By this time the Hudson, which was being pushed, had reached a point on the pavement directly opposite the hole above referred to. The driver of the stage in attempting to pass on the dirt to the right of the Hudson, ran into the hole and the stage tipped over against the Hudson. The Hudson was hit about fifteen feet back from the front of the stage, which was

twenty-five feet long. The son of the plaintiffs was killed, and this action resulted. The jury brought in a verdict for the plaintiffs for $15,000. A motion for a new trial was denied upon the condition that $8,000 of this be remitted, which was done, and this appeal is from a judgment for $7,000, which followed.

Appellants' first point is that the evidence is not sufficient to support the verdict of the jury as to negligence upon their part which proximately caused the injuries complained of. It is argued that there is no evidence to show excessive speed or other negligence; that the driver of the stage testified that he entered the subway at twenty miles an hour; that he did not see the Hudson until within twenty feet of it; that he was then going about fifteen miles per hour; that he was unable to pass to the left of the Hudson because of approaching automobiles; and that he thought there was room to pass to the right of the Hudson, between that machine and the bank. On the other hand, McBride, who had gone back to flag approaching cars, testified that other approaching cars either stopped or slowed down sufficiently to pass, and that he tried to stop the stage, without success; and that the stage was traveling forty-five or fifty miles an hour when it passed him. Appellants point out that he was not a good judge of speed, as he testified at the coroner's inquest, "No; I'm not what you would call a good judge of speed but it was going very fast." While this might affect the weight of his evidence, that argument is one for the jury. One of appellants' witnesses (Keck) testified that just as he was entering the south slope of the subway in a Ford coupe, at about twenty-five miles an hour, the stage passed him and proceeded down the incline. The driver of the stage testified that he did not apply his brakes as he descended the slope, but that when he first saw the Hudson, when about twenty feet therefrom, he put his car in second speed and set his brakes. If McBride's testimony could be disregarded, it still appears from the evidence that a stage, twenty-five feet in length, traveling at a rate of speed sufficient to pass another car going twenty-five miles an hour, entered a decline of five per cent grade which was 300 feet long, passed down the same without its brakes being applied, and crossed over a level strip eighty feet in length; that it then proceeded up more than

100 feet of ascending five per cent grade; that during the last thirty-five feet of this (the front of the car having passed fifteen feet beyond the Hudson) the car was in second gear with its brakes set; that it then stopped because its wheels dropped in a hole a foot and a half deep; and that it then struck the Hudson with sufficient force to knock it fifteen feet farther up the grade. With such evidence in the record it can hardly be said, as a matter of law, that the stage was running through a subway, over a wet pavement, at a moderate and lawful speed, and that there is no evidence to sustain a different conclusion reached by a jury. In *Davis* v. *Brown,* 92 Cal. App. 20 [267 Pac. 754, 757], the court said: ''A wet pavement downgrade in a tunnel certainly calls for the exercise of a degree of care that must be measured only by the circumstances and conditions presented, and not by any limited mileage per hour set forth in the Motor Vehicle Act. . . . '' ▪ The driver testified that he was hindered from seeing by the wet weather; that the lights are always bad in wet weather; that the reflection of the lights on the pavement is always bad in wet weather; and that he was blinded by approaching lights and did not see the Hudson until within twenty feet of it. Whether this constituted negligence under the circumstances was a question for the jury. (*Skaggs* v. *Wilhour,* 210 Cal. 524 [292 Pac. 649].) The witness, Keck, who was riding with his brother-in-law in a Ford coupe, at the south entrance to the subway, testified that they slowed down after the stage passed them, and also ''I told my brother-in-law, 'hold 'er'. I seen the other car up on ahead and I says, 'hold 'er'. I figured he could not get by because it looked like the other car was standing still there.''. While the driver of the stage testified that he did not see the Hudson in time to stop, this evidence of Keck, who apparently was in a less favorable position to see than was the driver of the stage, was sufficient to enable the jury to conclude that the driver of the stage was negligent in not seeing the Hudson before he did. At another time, the driver testified that he saw the Hudson just as he left the flat bottom of the subway and began to ascend the incline, which would have placed him about 100 feet from the Hudson. He also testified that he could have stopped his car in from thirty-five to thirty-seven feet. Whether he

should have stopped his car, after he saw the Hudson, was another question for the jury. We are unable to agree with appellants' contention that there is no substantial evidence from which a jury could have inferred negligence upon their part, and we think the facts pointed out and relied upon by them show no more than a conflict in the evidence.

Appellants next contend that the evidence, in three different aspects, shows contributory negligence upon the part of the deceased. It is first argued that since the deceased and his companions knew that the Hudson car had stalled twice within five blocks' of the entrance to the subway, it was contributory negligence, as a matter of law, for them to have started the car down into the subway. It is only where the deduction to be drawn from the evidence is inevitably one way or the other, that the question of contributory negligence is to be withdrawn from the jury. (*Wise* v. *Maxwell Hardware Co.*, 94 Cal. App. 765 [271 Pac. 918].) On this point, appellants infer that the car was pushed into the subway while the engine was not running. While the car was pushed to start the engine, one of the party, Fred P. Thaddeus, testified that the engine started before it reached the descent and that the car entered the subway on its own power. Be that as it may, the car was in charge of the automobile salesman, who was demonstrating it, and another man who was driving it. They may have known the car stopped on these two occasions because of the way it was adjusted, or because of some defect which caused it to stop when it was slowed down too much, but which never appeared when the car was being given the gas. Such an experience is not unknown to automobile drivers. They may have had reason to believe that the trouble was not to be expected to repeat itself in the next 700 feet, even though they had to pass over an incline with a grade of five per cent. It could hardly be held as a matter of law, that they were guilty of negligence. Even if it could be so held, there is nothing in the evidence to attribute this negligence to the deceased, as a matter of law. He was neither driving the car nor in charge of it. He is neither shown to have suggested proceeding through the tunnel, nor conclusively shown to have taken part in conveying the car into the tunnel. In fact, we think there is no evidence to show

that he actually took part in pushing the car in order to start it. Whether, as a passenger, he did anything that a reasonable man would not have done, is a question of fact and not of law. ■ Moreover, if negligence in connection with starting the car into the subway could be imputed to·him, as a matter of law, whether this was the proximate cause of the accident presents another question of fact. After the car again stalled in the bottom of the subway and the party again attempted to push it along the highway, a flagman was sent back to warn approaching cars. So far as shown by the evidence, this was successfully done in the case of every car approaching except the stage in question, and the question whether the driver of the stage was guilty of negligence in passing the flagman and in his manner of operating the stage through the subway, and the question whether such actions on his part were or were not the proximate cause of the accident, were questions of fact for the jury.

■ It is next argued that the deceased was guilty of contributory negligence as a matter of law, in standing behind the Hudson without taking adequate precaution for his own safety. The evidence shows that some of the party were at the side of the Hudson while pushing it and there is no evidence in the record to show that the deceased was in the rear of the car. A flagman had ·been sent back, who succeeded in stopping other cars, and who tried to stop the stage. Some precaution being shown, the question of whether or not it was adequate under the conditions shown, was for the jury.

■ A third argument is, that contributory negligence on the part of the deceased is conclusively shown by the fact that no lights on the rear of the Hudson were visible. In the first place, the evidence on this point is conflicting. While there was testimony that the lights were not seen, there is other testimony that they were burning, and the stage driver's statement that the bodies of men behind the Hudson obscured the light, is contradicted by the testimony of McBride, who testified as follows:

"A. Well, there were some on the right side pushing and some of them on the rear of the car pushing and about the middle.

"Q. Were any of them in such a position as to obscure the tail light?

"A. No, the tail light was not obscured."

Even if it were true that the tail-light was obstructed by some person, there is no evidence that this was done by the deceased, or that he had anything to do with causing it to be obstructed.

Not only does a conflict in the evidence appear, as to each of these contentions, but we find no evidence in the record to show that the deceased, as a passenger, did anything that could be conclusively held to be other than would have been done by a reasonable man, under the circumstances. Under the facts shown, the question of contributory negligence was one for the jury.

Appellants next complain of the refusal of the court to give the following instruction on contributory negligence: "Negligence in any degree on the part of the deceased, Howard W. Graves, amounting to a want of ordinary care, which operating concurrently with the negligence of the defendants, if any, contributed proximately to the accident in question, bars a recovery in this action by the plaintiffs, and this is so whether or not the defendants or either of them could have guarded against it by the exercise of ordinary care." It is first contended that this was not otherwise covered, as there was no clear and adequate definition of contributory negligence in the other instructions. In *Metcalfe* v. *Pacific Elec. R. Co.*, 63 Cal. App. 331 [218 Pac. 486, 487], the court said: "Taking all the instructions together it was not necessary specifically to define the term 'contributory negligence'. The sum total of the instructions gave to the members of the jury everything that a specific definition could have conveyed to their minds." An instruction practically the same as that quoted in the case just cited, was given in the instant case, in which, after defining negligence and the rules to be followed in determining the issue of negligence, the court instructed the jury that if they found that the greater weight of all the evidence was in favor of the contributory negligence of the plaintiff, they should accept such contributory negligence as a proved fact; otherwise, they should find that the plaintiff was not guilty of contributory negligence. The court then went on to instruct the jury that in order

to find a verdict for the plaintiff, they must not only find from a preponderance of the evidence that the defendant was negligent, but that such negligence was the proximate cause of the injury; and must further find that the evidence fails to show by a preponderance thereof, that the deceased was guilty of negligence contributing proximately to the injury. In this and three other instructions, the jury was plainly told that if they found that the deceased was guilty of any negligence which proximately contributed to the injury, the plaintiffs could not recover. Taking all of the instructions together, it fully appears that contributory negligence was as plainly defined as if a formal definition had been given, and so far as constituting a definition thereof, the requested instruction is no better or clearer than the instructions given. In the second place, the appellants insist that the jury was not otherwise instructed that negligence "in any degree" on the part of the deceased would constitute contributory negligence. The jury was adequately instructed in that regard in an instruction which contained the following: " . . . before you will be justified in finding a verdict against the defendant . . . you should also be convinced by a preponderance of the evidence . . . that the deceased was not guilty of any negligence proximately contributing to said accident."

This sufficiently covered that portion of the requested instruction and was sufficient in connection with the other instructions given. (*Sinclair* v. *Pioneer Truck Co.*, 51 Cal. App. 174 [196 Pac. 281]; *Power* v. *Crown Stage Co.*, 82 Cal. App. 660 [256 Pac. 457].)

■  Appellants next complain of the refusal of the trial court to give the following instruction: "I charge you that a person when suddenly confronted with danger is not to be held to the strict degree of accountability for their acts that they would be under ordinary circumstances, and in judging whether or not the driver of the stage exercised ordinary care as required of him his actions were to be measured by the facts and circumstances as they would have appeared to a reasonably prudent man in the exercise of the highest degree of care; and the fact that he might have taken some other course and thus avoided the accident, when viewed from the circumstances discovered later, would not be negligence on his part, simply because he chose the

wrong course to avoid a danger then open and apparent to him.''

This instruction left out of consideration the fact that the rule therein set forth applies where a person, without his own fault, finds himself in a position of apparent and sudden peril. (*Offerdahl* v. *Motor Transit Co.*, 80 Cal. App. 667 [252 Pac. 773]; *Rush* v. *Lagomarsino*, 196 Cal. 308 [237 Pac. 1066].) Appellants argue that this instruction should have been given in the instant case because the defendant driver was proved to have been proceeding at a moderate rate of speed, and without negligence. As we have heretofore pointed out, there was ample evidence to the contrary and that fact cannot be taken to have been established. There being evidence tending to show that the driver's perilous position was due to his own negligence, the omission from the instruction of the element of freedom from fault on the part of appellants, was alone sufficient ground for its rejection. (*Brooks* v. *City of Monterey*, 106 Cal. App. 649 [290 Pac. 540].) In the form given, the instruction was not proper, because one of the questions before the jury, under the evidence, was whether or not the driver of the stage was negligent prior to the time he saw the Hudson car, and the issue was not entirely the question of his conduct thereafter. (*Vedder* v. *Bireley*, 92 Cal. App. 52 [267 Pac. 724].) A further consideration is, that the jury was repeatedly instructed that appellants were not liable unless they themselves had been guilty of negligence and had done what no prudent or reasonable man would have done, under the circumstances.

Error is next claimed because of three instructions which the trial court refused to give, which were as follows:

''(a) If you find that the injury to Howard W. Graves was unavoidable on the part of the defendant Haworth, then you must find for the defendants. In other words, if the accident happened without negligence on the part of defendant Haworth, then the plaintiff cannot recover in this action.''

''(b) If from the evidence you believe that at any time before the accident in question, by the exercise of ordinary care the deceased, Howard W. Graves, could have remained or placed himself in a position of safety had he known of the approaching automobile of defendants, and if you further believe that he could have known of the approaching

of said automobile by exercising his sense of sight or hearing, then I charge you that the plaintiffs in this case cannot recover damages from the defendants.''

''(c) If you believe from the evidence in this case that the deceased, Howard W. Graves, was not exercising ordinary care at the time and place in question, and that but for this failure to use ordinary care on the part of the deceased the accident would have been avoided, then the plaintiff in this action cannot recover and your verdict must be in favor of the defendants.''

Not only does the evidence in this case fail to warrant such an instruction as the first of these, but the main purport thereof is covered by two instructions in which the jury were told that in order to find a verdict for the plaintiff, they must find from a preponderance of the evidence that the defendant was negligent; that this negligence was the proximate cause of the injury; that this negligence could not be presumed but must be proved; and that unless they were satisfied from the evidence that the defendants were negligent, and that the deceased was free from contributory negligence, then their verdict must be for the defendants. The second of these instructions overlooks the fact that the deceased was a pedestrian at the time he was injured, and that the law did not necessarily compel him to look behind him for approaching cars. (*Devecchio* v. *Ricketts,* 66 Cal. App. 334 [226 Pac. 11].) It also ignores the duty of the driver of the stage to have avoided the accident if he could. (*Furtado* v. *Bird,* 26 Cal. App. 152 [146 Pac. 58].) In addition, this was covered by other instructions by which the jury was told that if the deceased was negligent in any respect which contributed to his injury, the plaintiffs could not recover. The third of these instructions merely restates the matter of contributory negligence, and was covered by at least three other instructions, two of which were given at the request of appellants. In our opinion, the jury was fully and fairly instructed as to all issues submitted to them.

The judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 25, 1931.