[Civ. No. 14475.   First Dist., Div. One.   Mar. 21, 1951.]

CATHERINE PETERSEN, Appellant, v. L. C. DYNES et al., Respondents.

Stanley C. Smallwood for Appellant.

Krinsky & Abraham for Respondents.

BRAY, J.—Plaintiff appealed from a judgment in favor of defendants in an action brought to reform an agreement evidenced by certain instructions to a title company on the ground of (1) mutual mistake, and (2) mistake by plaintiff known to and concealed by defendants, and for a money judgment.

## QUESTION PRESENTED

The insufficiency of the evidence to support the court's findings based upon the claim that the evidence in favor of defendants is improbable and not sufficient legally to constitute a conflict with plaintiff's evidence.

## FACTS

The controversy arises out of a sale by plaintiff to defendants of a portion of a tract of land in Contra Costa County. The land actually conveyed is 3.63 acres. Plaintiff contends that the .63 acres was included by mutual mistake or by her mistake known to the defendants. There were a number of conversations between plaintiff and defendant Dynes relating to the transaction. It is not necessary to detail them all. The gist of plaintiff's testimony is that she was asked by Dynes if she wanted to sell any of her land and if so, its price. She stated she would sell at $5,000 per acre. Dynes said he wanted 3 acres for which he would pay $5,000 an acre or $15,000. It was agreed that there would have to be a survey and they agreed upon the surveyor. Later Dynes brought her a deposit receipt which she signed in triplicate, after she had required that the name therein, Kate Petersen, be changed to Catherine A. Petersen. This acknowledged receipt from defendants of $100 on account of the purchase price of "That certain three (3) acres, more or less, in the name of Catherine A. Petersen bounded on the North by Parker on the West by Rose, and with a highway frontage of approximately three hundred twenty-seven (327) feet on U. S. Highway 21.

"*The total purchase price is* Five Thousand Dollars ($5,-000.00) per acre (Three (3) ~~Dollars~~ acres, more or less, to be paid for on a basis of $5,000.00 an acre plus a *and the balance of same is to be paid within* *days from date hereof, as follows:* frontage of fifty-seven (57) feet on the Highway and approximately five hundred (500) feet deep.

"Balance of purchase price to be paid in cash to Contra Costa County Title Co.

"(Fourteen Thousand Nine Hundred ($14,900.00) Dollars)"

(The italicized portions are printed; the other portions are typewritten, the portion reading "acres, more or less, to be paid for on a basis of $5,000 an acre plus a" being interlined between the printed matter; and on plaintiff's copy (plaintiff's exhibit 1) the last line above quoted "(Fourteen Thousand Nine Hundred ($14,900.00) Dollars)", has been typed in after the carbon copy was made.)

Dynes testified that at the time plaintiff signed the receipt it contained the above notation that the balance due was $14,900. Plaintiff did not testify positively that this notation was not there when she signed it. She said she did not know, would not say, and could not remember. Defendant Kirk could not remember, either, whether it was there before he signed the receipt. Plaintiff said she received from Dynes three days later one of the copies which she had signed. She produced this copy, and had it admitted in evidence. It contains the notation. The title company sent her an original and copy of escrow instructions to be signed, which she did. At the bottom of one column it stated "1947 Co. Taxes in full $117.30 on 5.91 acres owned by you. You will receive credit through escrow for the purchases pro rata on the parcel now being conveyed by you." (Deducting 5.91 from the 9.54 total acreage owned by plaintiff leaves 3.63 acres.) The deed which plaintiff signed and left with the title company conveys 3.63 acres. She stated she did not discover that she had conveyed the extra .63 acres until about two months after the transaction was closed. Plaintiff testified that at no time did she realize that she was selling or conveying more than 3 acres.

Dynes' tsetimony was to the effect that plaintiff quoted him a price of $5,000 per acre and that he said he would take 3 acres provided the planning commission would pass it for subdivision building purposes; that later he told her he needed additional land for a road. Plaintiff told him to forget it; that she was not interested in a road. He also told her that he wanted to put up eight houses on the premises; and that he had been to the planning commission and that 3 acres would not do him any good, as the commission required close to half an acre for each home, and that $15,000 was all he had to spend for land, and that unless he got 57 feet more frontage than the 3 acres included he could not purchase the property. She said she would think it over. Plaintiff testified she did not remember such a conversation, but that he did say he was going to the commission. Later

defendant said she came to his workshop. He told her he had thrown up the deal because the planning commission would not let him cut up the lots ''that small'' but if she would give him the 57 feet for the $15,000 he would try it again. The 3 acres provided 270 feet only on the highway. With the additional 57 feet defendant would have 327 feet frontage. Plaintiff said that $5,000 an acre was a lot of money and that she would throw the 57 feet in. She would accept $15,000 as the purchase price of the 327 feet. This conversation was partially corroborated by Mrs. Dynes. Thereafter Dynes had the deposit receipt drawn up, consisting of three duplicate originals. Plaintiff read them, and after they were corrected, signed all three. He took them away, and after they were signed by defendants Dr. and Mrs. Kirk, Dynes gave one to the title company, one to plaintiff, and kept one. Before plaintiff agreed to give the 57 feet, he had instructed the surveyor to discontinue the survey. After plaintiff signed the receipt he instructed the surveyor to prepare a survey on the basis of a frontage of 327 feet. Dynes gave plaintiff a copy of the survey, telling her it was a survey of the property. Plaintiff denied receiving this. The title company, on Dynes' instructions, prepared escrow instructions and a deed and sent them to plaintiff by mail. Dynes took her to a notary's office where she signed the instructions and the deed.

### FINDINGS

The court found that the intention and agreement of the parties was that plaintiff sold and defendants bought for $15,000, 3.63 acres of land; that there was neither a mutual mistake nor a mistake by plaintiff, and that plaintiff knew that she was selling and conveying for that sum 3.63 acres, and not 3 acres only.

### EVIDENCE SUFFICIENT

The case is a factual one in which there is a positive conflict between plaintiff's testimony and that of Dynes. Dynes testified that he moved a stake to the point necessary to give him the additional land he needed for a road on the proposed subdivision of eight homes. Apparently this was after the first survey was made, giving a frontage of only 270 feet. Plaintiff testified she could not remember whether he told her about his desire to subdivide, but that he told her he had moved a stake back 47 feet and told her to go and see it. She could not find it so later he took her out on the road

and showed it to her. She claims he did not state for what purpose he had moved the stake nor did she ask him as she was not interested. It is not reasonable to expect a court to believe that while the matter of purchase was still under discussion and the prospective buyer moved a stake on the ground which he was contemplating buying, there would not be some discussion as to his purpose in so doing. Again, plaintiff does not deny the conversation in which both Mr. and Mrs. Dynes testified she agreed to convey the additional land. She just does not remember. She admits that before she signed the receipt she read it and that it then read "Three (3) acres, more or less, to be paid for on a basis of $5,000.00 an acre *plus a frontage of* fifty-seven (57) feet on the Highway . . ." (Emphasis added.) Moreover, when told by Dynes that he would need a road, she said "Forget it . . . I'm not interested." Yet she admits he then said he would have to see the planning commission, and still she claims she does not remember his telling her he wanted the property for subdivision purposes. He testified that after he saw the commission, he reported what the commission required, and told her that unless he could have additional land he would not buy. She claims that in none of the conversations subsequent to his statement about seeing the commission did she inquire nor did he tell her, what the commission required. Or, rather, she did not deny that he told her but contented herself with saying that she did not remember.

From the record, plaintiff appears to have been an unsatisfactory witness. As to most of the instances in which Dynes' story of the conversations between her and him differs from hers, she did not positively deny them. Her answers usually were that she did not remember or did not recall. Whether this was due to witness-stand fright, actual or feigned lack of memory, or other reasons, the trial court observing her manner of testifying was in a much better position to determine than we are from the cold record before us. That is one of the reasons for the prudent and oft-quoted rule that where there is a substantial conflict in the evidence, the reviewing court is bound by the trial court's findings. The court believed Dynes, and his testimony alone is sufficient to support the findings.

In addition to the contention that the evidence does not support the judgment, plaintiff contends that the deposit receipt clearly shows that the parties were dealing upon a $5,000 per acre basis. The receipt states that "The total

purchase price is Five Thousand Dollars ($5,000.00) per acre . . . to be paid for on a basis of $5,000.00 an acre *plus a frontage of fifty-seven (57) feet . . . Balance of purchase price . . . $14,900.00 . . .*'' (Emphasis added.) While the receipt does state the price as $5,000 per acre, the balance of its language supports defendants' version of the transaction. ''In arriving at a solution of the problem, the written contract itself was an important factual element, evidence of a high order that could not be disregarded. Furthermore, this important evidentiary factor derives no inconsiderable support from the established legal presumption that, having been deliberately executed, it correctly expressed the intention of the parties. (*Welk* v. *Conner,* 102 Cal.App. 286, 289 [282 P. 963].) The presumption is not conclusive and may be overcome by satisfactory evidence which shows that the written instrument is not in conformity with the true agreement of the parties. The burden of overcoming the presumption, however, rests upon him who seeks to avoid the plain terms of the written contract. [Citations.] This burden is rendered the more onerous because of the announced rule that the evidence which is relied upon to establish the existence of fraud or mistake as a ground for revision must be clear and convincing and not loose, equivocal or contradictory, leaving the question of fraud or mistake in doubt.'' (*California Trust Co.* v. *Cohn,* 9 Cal.App.2d 33, 39-40 [48 P.2d 744].) But, says plaintiff, the receipt (if construed adversely to her), the escrow instructions and the deed failed to express her intention. However, while there is evidence which might have supported a finding in her favor, there is substantial evidence (if not the preponderance of evidence) which shows that she made no mistake. It is true that the receipt is inexpertly drawn, but that fact does not prove plaintiff's contention.

Plaintiff urges us to disregard the testimony of Mr. and Mrs. Dynes, on the authority, she says, of *Clarke* v. *Fiedler,* 44 Cal.App.2d 838 [113 P.2d 275]. In the quoted portion the court said, ''If we disregard, *as the trial court did,* the testimony of respondent . . .'' (p. 846; emphasis added) there is no creditable contradiction of appellant. Plaintiff would have us reweigh the evidence, and as the trial court *did not do,* reject the testimony of Mr. and Mrs. Dynes. As the trial court here obviously rejected plaintiff's testimony, the Clarke case supports the position of defendants rather than that of plaintiff. The following language

from the Clarke case is appropriate (p. 845): "Had the court adopted respondent's version of the negotiations and the nature of the proposed written agreement, we would not be justified in disturbing his findings based thereon, because it is only when we can say that the testimony relied upon by the trial court to support its judgment is inherently improbable that we may disturb the findings . . ." The testimony relied upon by defendants here is not inherently improbable. ▮ The matter of the credibility of witnesses is for the trial court. Its decision upon a conflict of evidence cannot be disturbed by this court. "It is not sufficient upon appeal to point out, or even demonstrate to this court, that the judgment is against the preponderance of the evidence, or that upon the same evidence other persons would come to a different conclusion. If there is any substantial evidence upon which the court could have found its judgment it must be upheld." (*Bradford* v. *Southern Cal. Petroleum Corp.*, 62 Cal.App.2d 450, 461 [145 P.2d 36].)

Plaintiff quotes *Herbert* v. *Lankershim*, 9 Cal.2d 409 [71 P.2d 220], *Lefrooth* v. *Prentice*, 202 Cal. 215 [259 P. 947], and *Fewel & Dawes, Inc.* v. *Pratt*, 17 Cal.2d 85 [109 P.2d 650], in support of her contention that defendants' evidence was improbable and hence did not create a conflict. Those cases do not apply here as an examination thereof fails to disclose any improbability therein. As pointed out herein, several portions of plaintiff's own testimony bear an element of improbability.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.