[Civ. No. 12392.   Second Dist., Div. One.—May 16, 1941.]

THOMAS A. CLARKE et al., Appellants, v. MARTY FIED-
LER, Respondent.

Delvy T. Walton for Appellants.

Mitchell, Silberberg, Roth & Knupp, Joe Orloff, Lester W. Roth and Peery Price for Respondent.

WHITE, J.—Plaintiffs by their complaint filed herein alleged that in the year 1938 and up to June 27th thereof, they were operating a public soft baseball park in the city of Santa Monica; that on or about June 1st, they were solicited by defendant, through the latter's agent, to purchase an interest in similar baseball parks operated by defendant in the

city of Los Angeles; that negotiations were commenced between the parties with a view to combining their joint efforts in the ownership and management of the Los Angeles baseball parks, and that at defendant's suggestion and with his consent, plaintiffs did in fact close their Santa Monica activities on or about June 27, 1938. It was further alleged that a definite and certain oral contract was agreed upon for a sale by defendant to plaintiffs of a fifty per cent interest in the Los Angeles baseball parks; that said agreement was reduced to writing to be signed by the parties, dated June 30th, with the joint operations of the parties in connection therewith to commence July 1, 1938. A copy of said agreement was attached as an exhibit to the complaint, and, generally speaking, provided that defendant would sell to plaintiffs a fifty per cent interest in and to the said amusement business and that plaintiffs would enter upon the active management and operation of the same with the defendant after closing and giving up their similar enterprise in the city of Santa Monica. The agreed purchase price was $15,000, of which $6,000 was to be paid upon the execution and delivery of the agreement, $1500 on August 1, 1938, and $2,500 respectively on September 1st, October 1st and November 1st of the same year. The agreement further provided that defendant's two brothers, who were associated with him in the Los Angeles venture, were to retire from the business, and that fifty per cent of the same was to be owned by the plaintiffs and a like per cent by the defendant.

Plaintiffs further alleged in their complaint that from and after the 15th day of June, 1938, as their negotiations with defendant progressed, and when the contract terms were agreed upon, they entered upon their duties in the Los Angeles amusement parks, rendered considerable and extensive services in connection therewith in the matter of meeting the managers of various baseball teams and umpires, checking the gate receipts of the two parks, going over financial statements of past operations, and discussing and formulating plans for improvement of said parks and the purchase of additional appurtenances in connection therewith. It was further charged by the complaint that after full and complete terms of the contract were agreed upon it was determined to put such agreement in writing; that said writing was prepared and submitted by plaintiffs to defendant on June 30, 1938, upon

which occasion a definite appointment was made for the following day, at which time the writing was to be signed. Plaintiffs alleged that at defendant's request they telegraphed for funds to make the initial payment; obtained the funds and deposited them in a bank; but that on the first day of July, 1938, at the appointed time, defendant failed to appear and refused to accept payment from plaintiffs or to sign the contract in question. The complaint further averred that on said first day of July, 1938, plaintiffs learned that defendant had given an option to another party and had repudiated his agreement with plaintiffs, refusing to carry out the terms of the same or to proceed with the contract. By reason of defendant's alleged failure to proceed in accordance with the terms of the contract, plaintiffs sought damages for expenses necessarily incurred in connection with the preparation of the contract, loss of their investment in the Santa Monica amusement park, and deprivation of profits which were in prospect and would reasonably have accrued had defendant fulfilled the terms and conditions of the contract in question.

Defendant interposed a general demurrer to plaintiffs' complaint on the usual statutory grounds, and further demurred on the ground that the cause of action was barred by the provisions of section 1973a of the Code of Civil Procedure. The demurrer being overruled, defendant filed his answer, traversing all the material allegations of the complaint and setting up, as a separate defense, that the action was barred by the aforesaid code provision.

On March 6, 1939, the case proceeded to trial before the court sitting without a jury. Following completion of the trial, the court filed a written memorandum of decision, made full and complete findings of fact upon the allegations of plaintiffs' complaint and the affirmative defense of defendant, and concluded that plaintiffs had sustained damage in the sum of $7,000, which they were entitled to recover from defendant. Judgment was accordingly entered April 3, 1939. Thereafter and within the time allowed by law, defendant filed a notice of intention to move for a new trial. This last-named motion was heard and submitted, whereupon the court, on May 24, 1939, made its written decision on motion for new trial, ordering the earlier judgment vacated and specifying particular changes or amendments to the findings, and

ordered judgment for defendant. That judgment from which this appeal is taken was entered June 9, 1939.

In the first set of findings the trial court found that following negotiations between the parties they did, on or about June 28, 1938, orally agree upon the terms of sale of a fifty per cent interest in defendant's business to plaintiffs, and agreed that the latter should cause said terms to be reduced to writing as evidence of such agreement, said writing to be executed on July 1, 1938. The court further found that prior to reaching said agreement plaintiffs had operated a baseball park in the city of Santa Monica and owned certain necessary equipment therein which represented an investment in excess of $5,000, which amusement park was closed and the equipment therein disposed of solely by reason of the agreement made between plaintiffs and defendant, and that by reason thereof plaintiffs suffered a loss of $800. It was further found that pursuant to the understanding of June 28th, plaintiffs did prepare an agreement in writing setting forth all the terms theretofore agreed upon, and on July 1st deposited $6,000 in a bank for the purpose of making the initial payment; that defendant had agreed to meet with plaintiffs on July 1st, sign the agreement and receive the initial payment thereunder, but that said defendant did not appear in conformity with his promise, did not execute the agreement, but on the contrary repudiated the same and each and every term thereof. The findings upon which the original judgment was predicated further found that plaintiffs had expended the sum of $128 as attorney's fees; that the approximate net gain of the defendant in operating the Los Angeles amusement parks in 1937 was in excess of $19,000; that the approximate net gain made by the defendant in the operation of the same parks in the year 1938 was slightly in excess of $10,000, and that by reason of defendant's repudiation of said contract plaintiffs suffered a loss in the sum of $7,000. Judgment for this amount was docketed and entered on April 4, 1939.

In the amended findings of fact and conclusions of law, upon which the instant judgment is predicated, the court found that in the first half of the year 1938, plaintiffs were operating a public baseball park in the city of Santa Monica; that they learned that defendant had for sale a fifty per cent interest in the two baseball parks owned and operated by him in the city of Los Angeles; that after the initial meeting

of plaintiffs and defendant on June 19th, the parties entered upon negotiations for the sale and purchase by plaintiffs of a fifty per cent interest; that these negotiations continued at frequent intervals from June 19th to about June 28th, and that upon the last-mentioned date the parties orally agreed upon some terms of sale of said interest and agreed that plaintiffs should cause the terms then orally agreed upon, and such other terms as would or might be deemed necessary for a partnership working agreement, to be reduced to writing and the same to be executed by the parties as evidence of their agreement. It was further found that plaintiffs were to present such writing to the defendant on July 1st, but that it was a part of the understanding of the parties that no term of the said oral negotiations should become effective until after execution of the proposed writing. In the last-named findings the court found that plaintiffs' Santa Monica investment exceeded $5,000, and that in reliance upon defendant's promise to execute a contract, plaintiffs agreed to and did close their Santa Monica amusement parks for the purpose of creating additional good will. It was further found that on June 28th the plaintiffs did cause to be prepared a writing setting forth the terms theretofore agreed upon and certain other terms essential to an operating partnership, and did on July 1, 1938, deposit in a bank $6,000 for the purpose of making an initial payment pursuant to the oral agreement; that on the last-mentioned date plaintiffs, pursuant to appointment theretofore made, appeared at the stated place for the purpose of making the initial payment of $6,000 and for the further purpose of executing and delivering the written agreement and of receiving assignments of a fifty per cent interest in the leases and in the enterprises operated by defendant; that plaintiffs were at all times ready and willing to do and perform each and every promise, term and condition of their oral agreement, but that defendant did not appear; that he did not sign the written agreement nor assign any interest in the enterprise to the plaintiffs. Paragraph VII of the last-named findings reads: ''That by reason of the failure of the parties to reduce their agreement to writing in order to make the same binding, no damage has been suffered by the plaintiffs.'' The same findings also declared that neither of the plaintiffs entered into any duties or rendered any services in connection with the Los Angeles parks

owned and operated by the defendant. As conclusions of law upon which the second judgment was rendered, the court concluded: "1. That no contract was entered into between said parties. 2. That assuming that the cause of action alleged by the plaintiffs is predicated upon an oral contract, said oral contract and said alleged cause of action are barred by the provisions of section 1624 of the Civil Code of the State of California and section 1973 of the Code of Civil Procedure of the State of California; that the said cause of action is barred by the provisions of section 1624a of the Civil Code of the State of California and section 1973a of the Code of Civil Procedure of the State of California." On June 9, 1939, judgment was entered for defendant, and it is from that judgment that plaintiffs prosecute this appeal.

It is first contended by appellants that the final set of findings is wholly unsupported by the evidence. From a mere reading of the record on this appeal, we are impressed with the fact that the original findings are amply supported by the evidence and justified the statement made by the court in its original memorandum decision, wherein it was stated: "So persuasive is the narrative recited by him (plaintiff Thomas A. Clarke) and so convincing are the proofs offered by him, of the agreements arrived at that no doubt is left that he and Marty Fiedler definitely agreed upon the terms set forth in the writing which was to be executed." But notwithstanding the view we might take of the evidence, we are limited in our consideration thereof to a determination solely of the question whether there is contained in the record evidence of sufficient substantiality to support the last-made findings and judgment, provided, of course, that the original findings and judgment were legally and lawfully set aside— a question we shall discuss and determine later in this opinion. We have examined the reporter's transcript in detail and find therein testimony, which, if believed by the court, would establish the fact that there never was any final and complete understanding between appellants and respondent herein that the latter was to sell to the former fifty per cent of his own interest in the Los Angeles amusement parks. We refer particularly to the testimony of respondent himself. He testified that it was true that he owned a fifty per cent interest in the parks, but that his two brothers owned the remaining fifty per cent. This witness admitted discussions with appel-

lants concerning their acquiring an interest in the baseball parks, but throughout his testimony contended that appellants were negotiating for the purchase of the interest belonging to his brothers, neither of whom are parties to this litigation. While admitting that appellants showed him the proposed contract, he testified that he looked at it only casually, for the asserted reason that he considered it as a contemplated deal between appellants and respondent's two brothers. Respondent further testified that he agreed to only one thing, and that was his willingness to accept appellants as partners should they purchase the interest of his brothers. ▌ Had the court adopted respondent's version of the negotiations and the nature of the proposed written agreement, we would not be justified in disturbing his findings based thereon, because it is only when we can say that the testimony relied upon by the trial court to support its judgment is inherently improbable that we may disturb the findings; and in the last-mentioned case the issue becomes one of law. Our jurisdiction is limited to questions of law.

But it is at once apparent that the trial court was not impressed with the verity of respondent's testimony, because reference to the amended findings of fact discloses that the court found in favor of appellants on all of their contentions, including the claim that after weeks of conferences and negotiations, plaintiffs, with the consent of respondent, caused to be prepared a contract between the parties for the purchase of a fifty per cent interest in the baseball park venture; deposited the initial payment thereunder in a bank; and on July 1, 1938, "plaintiffs appeared at the Rector Hotel in the City of Los Angeles, pursuant to the arrangements made on June 30, 1938, for the purpose of making said payment of $6,000.00 to the defendant and for the purpose of executing and delivering said writing and of receiving the assignments of said fifty per cent interest in said leases and in the enterprises operated in said parks; that plaintiffs on said July 1st were ready, willing and able to do and perform each and every promise, term and condition of their oral agreement and did then and there offer so to do; but that defendant did not appear at said hotel; that he did not meet plaintiffs at any place; that he did not receive said payment; that he did not assign the interest in said enterprises to the plaintiffs; that he did not assign any interest in the said

leases; that he did not execute said writing, but on the contrary refused to enter into or execute said proposed agreement''.

We are therefore called upon to determine whether the finding ''that by reason of the failure of the parties to reduce their agreement to writing in order to make the same binding, no damage has been suffered by the plaintiffs'' is supported by the evidence. If we disregard, as the trial court did, the testimony of respondent that there were never any negotiations to purchase his interest and that the deal was exclusively between appellants and the brothers of respondent, then we have no hesitancy in saying that the proof is overwhelming and without any creditable contradiction that respondent accepted the written contract on the night of June 30th and agreed to meet on July 1st for the purpose of signing the same and to receive the initial payment thereunder. Having thus assented to the terms and conditions of such contract, respondent is bound by them, and the court should have so found under the evidence herein. The testimony clearly shows that respondent at no time expressed an intention not to be bound until the writing was executed, but his every act and declaration was to the contrary. After all, the formal written contract is not the agreement of the parties, but only evidence of that agreement. The oral agreement between the parties, which left nothing to be done other than to sign the writing and to pay over the initial payment, fully met the requirements of sections 1550 and 1565 of the Civil Code, and therefore constituted a valid and binding contract. In all the cases cited by respondent it appears from the facts thereof that the parties therein understood that their agreement was not to become binding upon any of them until evidenced by the written form; and under those circumstances, of course, their understanding does not become a binding agreement until it is reduced to writing and signed by the parties to it. However, where, as in the instant case, the contract is of such a nature that the law does not require it to be in writing, and it is conceded that a contract of partnership may be oral, and where the terms of the contract are definitely agreed upon and complete, then the fact that contemporaneously with the making of their full and complete oral agreement, they decide to evidence the same by a written instrument, the force and effect of the oral

agreement is not thereby impaired or interfered with. We believe this rule to be sound and that it should be so held in the present case. The reason for the rule is thus aptly stated in *Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209 [39 N. E. 75, 43 Am. St. Rep. 757, 29 L. R. A. 431]: "Any other rule would always permit a party who has entered into a contract like this, through letters and telegraphic messages, to violate it, whenever the understanding was that it should be reduced to another written form, by simply suggesting other and additional terms and conditions. If this were the rule the contract would never be completed in cases where, by changes in the market, or other events occurring subsequent to the written negotiations, it became the interest of either party to adopt that course in order to escape or evade obligations incurred in the ordinary course of commercial business. . . . If the parties did not become bound in this case they cannot be bound in any case."

See, also, *Pratt* v. *Hudson River R. R. Co.*, 21 N. Y. 305, 308, where it was said: "A contract to make and execute a certain written agreement, the terms of which are mutually understood and agreed upon, is in all respects as valid and obligatory, where no statutory objection interposes, as the written contract itself would be, if executed. If, therefore, it should appear that the minds of the parties had met; that a proposition for a contract had been made by one party and accepted by the other; that the terms of this contract were definitely understood and agreed upon, and that a part of the mutual understanding was that a written contract embodying these terms should be drawn and executed by the respective parties,—this is an obligatory contract, which neither party is at liberty to refuse to perform. . . . "

When, as here, the evidence indisputably shows that all the terms and conditions of the understanding between the parties were definitely agreed upon and the written memorial thereof itself accepted, though not signed, the parties are bound.

Appellants' contention that the trial court was without power to alter its findings and completely to reverse its prior judgment cannot be sustained. Under the broad power conferred upon the court in this regard by section 662 of the Code of Civil Procedure, the trial court was empowered, in ruling upon the motion for a new trial, if it deemed itself

mistaken as to its previous view of the evidence or in the application thereto of the law, to set aside the previous findings and the judgment predicated thereon. (*Spier* v. *Lang*, 4 Cal. (2d) 711, 714 [53 Pac. (2d) 138]; *Wyman* v. *Monolith Portland Cement Co.*, 3 Cal. App. (2d) 540, 545 [39 Pac. (2d) 510].) The case of *Jones* v. *Clover*, 24 Cal. App. (2d) 210 [74 Pac. (2d) 517], relied upon by appellants, is not in point here. That case deals only with the power of the court under sections 663 and 663a of the Code of Civil Procedure. The power of the court under section 662 was neither discussed nor decided. The original judgment herein having been vacated by a duly entered minute order within the sixtyday period prescribed by section 660 of the Code of Civil Procedure, the court was authorized to file new findings and judgment, and it was not required that such new findings be limited to those expressly referred to in the valid minute order setting aside, within the statutory time, the original findings and judgment. By its last-named order the court was authorized to adopt findings and enter such judgment as in its opinion correctly determined the issues raised by the pleadings and presented by the evidence.

■ We come now to a consideration of respondent's claim that the judgment must be affirmed because the alleged agreement provides for the sale of goods and choses in action of the value of $500, as well as for the sale of an interest in real estate, and hence is within the statute of frauds (Civ. Code, subds. 1 and 4, secs. 1624, 1624a and 1724; Code Civ. Proc., secs. 1973 and 1973a). The agreement before us was for the creation of a present partnership in a going business, and not in a business to begin at some future time. The contract, creating as it did an immediate partnership, was a contract which was to be performed at once and without any delay. Though we concede that certain property constituted a portion of the assets of the going business, nevertheless the partnership contract did not contemplate the transfer of such property from one party to the other, because the interest of one partner in the assets of the partnership does not entitle him to any particular portion of such assets, but merely confers upon him a right to an accounting with the other members of the partnership, and when the affairs of the partnership are settled, such partner shall receive the share to which he is entitled. Until the affairs of the part-

nership are wound up and settled the claims of the respective partners are, strictly speaking, equitable, because the only way such claims can be enforced is through an equitable action for an accounting. The agreement with which we are here concerned therefore cannot be said to contravene the provisions of the statute of frauds. ▇ As to the duration of the partnership the agreement is silent, and no evidence on that subject was introduced at the trial. The partnership was therefore one at will. The period of the leasehold interest belonging to the partnership is no criterion for determining the duration of the partnership. Unless such be recognized as the rule, it would mean that should a partnership own or acquire a fee simple, there would be a never-ending partnership. Manifestly such is not the law.

▇ Holding as we do that the action of the trial court in setting aside the original findings and judgment was within its prerogatives and power under section 662 of the Code of Civil Procedure, we are not authorized to direct the reinstatement of such findings and judgment, but are limited to reversing the final judgment because we conclude that the findings upon which it is predicated are not supported by the evidence. It therefore becomes unnecessary to pass upon the claim that the damages awarded by the first judgment were excessive.

The judgment from which this appeal was taken is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.