[Civ. No. 20046. First Dist., Div. One. Jan. 9, 1963.]

JEAN AVERY, as Administratrix, etc., et al., Plaintiffs and Appellants, v. ASSOCIATED SEED GROWERS, INC., Defendant, Cross-defendant and Respondent; LEONARD HENDERSON, Defendant, Cross-complainant and Appellant.

Alfred Nelson for Plaintiffs and Appellants.

Spruance, Simonian & Pretzer and Arthur L. Pretzer for Defendant, Cross-complainant and Appellant.

Knox, Goforth & Ricksen and Calvin T. Goforth for Defendant, Cross-defendant and Respondent.

Pillsbury, Madison & Sutro, Carlisle B. Lane and Thomas E. Haven as Amici Curiae on behalf of Defendant, Cross-defendant and Respondent.

SULLIVAN, J.—Plaintiffs, R. L. Avery and Matt Carroll, hereafter collectively referred to as Avery,[1] and cross-complainant Leonard Henderson, hereafter referred to as Henderson, separately appeal from a judgment entered on February 10, 1961, vacating and setting aside a previous judgment entered on November 23, 1960, in their favor and ordering that said parties take nothing by their complaint and cross-complaint respectively.[2]

In 1957, the plaintiffs, who were tomato farmers, purchased from the defendants Espino and Henderson, who were nurserymen, certain tomato plants with which to plant 30 acres of land in San Joaquin County. Although plaintiffs ordered only Improved Pearson tomato plants, it subsequently developed that on 11-1/2 acres of the land, the tomatoes produced were a mixture of Improved Pearsons and a distinct variety known as Pear tomatoes. All of the plants sold by Henderson to the plaintiffs came from certain identified seed beds which he had planted with seed purchased from the Delta Supply Company. The packages of seeds were labelled "Improved Pearson" and while some of the seed was sold to Delta by the Langen Seed Co. and some by the Associated Seed Growers, Inc., the heaviest concentration of pear-shaped tomatoes came from the beds in which Henderson had planted the seed of the latter company.

Plaintiffs' second amended complaint, on which the cause was tried, sets forth three separately stated causes of action. The first cause of action against the defendants Espino[3] and Henderson sought damages for breach of warranty in the sum of $3,151.92. The second cause of action against the defendants Bert Langen,[4] Richard Bajado and Associated Seed Growers, Inc., hereafter referred to as Asgrow, sought

---

[1] R. L. Avery died during the pendency of this appeal and Jean Avery, administratrix of his estate, has been ordered substituted herein in his place.

[2] In identical language in separate notices of appeal Avery and Henderson also appeal from the court's order granting the motion for new trial and vacating the previous judgment pursuant to section 662 of the Code of Civil Procedure and "from all orders and Judgments made, entered or filed . . during the calendar year 1961. . . ." As we point out, *infra*, the appeal is properly taken from the judgment of February 10, 1961, and the appeals from all other judgments and orders must be dismissed.

[3] Espino, though served with process, failed to appear and his default was entered. No further reference will be made to him herein.

[4] As other pleadings herein indicate, Bert Langen was an individual doing business as the Langen Seed Co., and Richard Bajado, an individual doing business as the Delta Supply Co.

damages in the same amount because of the negligence of such defendants in supplying mixed "Pearson" and "Pear" tomato seeds to the defendants Espino and Henderson. The third cause of action against the same defendants named in the second sought the same amount of damages because of the special injury resulting to plaintiffs from the mislabelled seed containers predicated upon sections 912, 913 and 919 of the Agricultural Code.

Henderson answered the above second amended complaint and also filed a cross-complaint against Asgrow, Langen and Bajado.[5] Such cross-complaint set forth four separately stated causes of action seeking damages in the sum of $6,849.68. The first cause of action was based on the alleged false representations that the seeds involved would produce Improved Pearson tomatoes, said representations having been allegedly made by the defendants "with no reasonable ground for believing them to be true." The second cause was asserted on the same basis except that the alleged representations "were not warranted by the information and knowledge of said defendants. . . ." The third cause of action was for breach of express and implied warranty. The fourth cause of action was for special injury resulting from the mislabelling of the seed and, like plaintiffs' cause above mentioned, was based on the same sections of the Agricultural Code.

Henderson's answer, while admitting that Avery purchased the tomato plants, generally speaking, denied all of the material allegations of the second amended complaint and, among other things, alleged as an affirmative defense that Avery had failed to give notice of breach of warranty in compliance with section 1769 of the Civil Code. Asgrow's answer to the second amended complaint denied all liability and as an affirmative defense alleged that, by the language of the label, its liability in any event was limited to the price of the seed. Asgrow's answer to Henderson's cross-complaint was to the same effect.

The trial court found, so far as is pertinent here,[6] that

---

[5]More precisely, Henderson filed a "First Amended Cross-complaint," an "Amendment to First Amended Cross-complaint" and an "Amendment to Amendment to First Amended Cross-Complaint." We refer to the last two pleadings on which the cause was tried as the cross-complaint.

[6]Generally speaking, the court found to be true all of the allegations of certain paragraphs of the second amended complaint bearing upon Avery's transactions with Espino and Henderson but found it was not true that Espino had sold any Pear tomato plants to Avery. At the conclusion of plaintiffs' case in chief, the court granted motions for

Avery purchased from Henderson tomato plants which the former requested and the latter warranted to be all "Improved Pearsons"; that, as we have stated above, they were not all Pearsons but were Pearsons mixed with Pear tomato plants, as a result of which Avery was damaged in the sum of $3,151.92; that none of the seed sold by Langen to Henderson was of the Pear tomato variety; that Asgrow did not sell any seed directly to Henderson but did sell it to Delta Supply Company, a corporation, which in turn and through its employee, Bajado, sold the seed to Henderson; that, in substance, when the seed was delivered to Henderson it was in the same unbroken containers in which it left Asgrow; that the seed contained a mixture of Pearson tomato seed and Pear tomato seed; that all of the packaging and sealing of the seed was done by Asgrow and all of the sealed packages had labels affixed thereto stating that the whole thereof was only Pearson tomatoes; that in fact from one-third to one-half of the contents were Pear tomatoes in some of the sealed packages; that Asgrow knew that the tomato seed bought by Henderson would be planted in a nursery for the purpose of selling to farmers like Avery the tomato plants grown therefrom; that Henderson at no time ordered seed mixed as above stated; that Asgrow was careless in the packaging, supplying and sealing of the packaged seed in that when it was delivered by Asgrow to Delta Supply Company, some of the seed in some of the packages, to wit, one-third thereof, was not Improved Pearson tomato seed but Pear tomato seed; that, on the basis of the above-mentioned sections of the Agricultural Code, Avery was specially injured and the selling and delivering of tomato seeds in containers not disclosing that said seed was mixed as aforesaid was a nuisance specially injurious to Avery; that it was true that the labels contained provisions limiting warranty liability to the price of the seeds; and that it was not true that Avery had failed to give notice of breach of warranty to Henderson.

The trial court, generally speaking, made findings favorable to Henderson in connection with the latter's cross-complaint; found that the various transactions occurred as stated in the previous findings; that Asgrow was aware that its seed might be purchased by individuals engaged in planting seeds to produce tomato plants for commercial purposes; that said

nonsuit on behalf of Langen and Bajado and ordered the second amended complaint dismissed as to them. We therefore do not consider the findings in reference to the defendants Espino, Langen and Bajado.

seed was sold within California for sowing purposes; that when Henderson sold the young plants to Avery he was unaware and had no reasonable way of ascertaining that they were other than the Improved Pearson type; that Henderson suffered damage in the sum of $6,849.68; that there was no privity of contract between Avery and Asgrow or between Henderson and Asgrow.

The court concluded that "the tomato seeds sold to Leonard Henderson were at the time of sale a public nuisance"; that "as a proximate result of the public nuisance created and maintained by" Asgrow, Henderson suffered damages and was entitled to judgment against Asgrow for $6,849.68 and in addition thereto the sum of $3,151.92 or any other sum required to be paid by Henderson to Avery; that Avery was entitled to judgment against both Henderson and Asgrow in the sum of $3,151.92; and rendered judgment accordingly.

The above judgment was entered on November 23, 1960. On the same day, Asgrow filed its notice of intention to move for a new trial, specifying therein four statutory grounds. (Code Civ. Proc., § 657, subds. 5, 6 and 7.) On January 18, 1961, the court made its minute order "granting" the above motion, vacating the judgment and ordering judgment in favor of the defendants on Avery's complaint and in favor of Asgrow on Henderson's cross-complaint.[7] Such new judgment was filed on February 9, 1961, and entered on February 10, 1961. On March 14, 1961, Avery, and on March 16, 1961, Henderson, filed a notice of appeal therefrom. On March 30, 1961, the court filed, *nunc pro tunc* as of February 3, 1961, new findings of fact and conclusions of law. The second set of findings were substantially the same as the first with the following exceptions: In the new findings of fact, the court found that it was *not* true that the selling and delivering of the seed was a nuisance specially injurious either to Avery on their second amended complaint or Henderson on his cross-complaint; and that it was *not* true that

[7]The minute order states: "Motion for New Trial heretofore submitted.
"Court ordered Motion for New Trial granted upon ground #3, as set forth in Defendants' Motion for New Trial, 'in that,' decision is against Law.
"It is further ordered, that pursuant to Sec. 662 of the Code of Civil Procedure, the judgment heretofore entered in favor of Plaintiffs be and the same is hereby vacated and set aside and Judgment directed to be entered in favor of defendants Asgrow Seed Growers Inc. and Leon Henderson and further ordered that Defendant and Cross-Complainant Henderson take nothing by way of cross-complaint."

either Avery or Henderson were damaged in any amount. In the new conclusions of law, the court merely concluded that Henderson was entitled to judgment against Avery and that Asgrow was entitled to judgment against Avery (on the complaint) and Henderson (on the cross-complaint), omitting its conclusion previously made that the seeds were a public nuisance and that Henderson suffered damages as a proximate result thereof.

Henderson, apparently because the first judgment was in general favorable to him, at no time made either a motion for new trial or any other motion attacking the first judgment in the trial court.

Avery's contentions on their appeal may be summarized as follows: (1) That the relief granted Henderson under section 662 of the Code of Civil Procedure is void because Henderson did not move for a new trial and "is also void for all the reasons making the order favorable to . . . [Asgrow] void"; (2) that the relief granted Asgrow is void because its motion for a new trial was never set or noticed for hearing, heard or submitted; (3) that the second set of findings and conclusions are void because they were not pursuant to the court's order and although entered *nunc pro tunc* as of February 3, 1961, were signed and filed after the expiration of the 60-day period "allowed for making orders under 662 or otherwise based on a motion for a new trial"; (4) that assuming that the second set of findings and conclusions are void, the second judgment is not supported by the first set of findings and conclusions; and (5) that the second judgment is not sustained by the second set of findings since such findings establish damages based on negligence and on certain provisions of the California Seed Law. (Agr. Code, §§ 910 et seq.)

Henderson on his appeal which as noted earlier he makes only as cross-complainant herein, contends that: (1) The trial court lacked power to file the second set of findings *nunc pro tunc*; and (2) special damages suffered by him were recoverable under provisions of the California Seed Law. Henderson urges that the second judgment be reversed and that "the trial court be ordered to reinstitute judgment" in his favor.[8]

---

[8]Henderson is before us as both appellant (on the cross-complaint) and respondent (on the second amended complaint). As respondent he filed no reply brief answering Avery's attack on the vacating of the first judgment in favor of Avery and against Henderson on the complaint. By our leave,

We must therefore examine more closely the procedural developments leading up to the second judgment. ██ It is now well settled that when the trial court in ruling upon a motion for new trial follows the procedure authorized by section 662 of the Code of Civil Procedure no new trial is granted. (*Pacific Home* v. *County of Los Angeles* (1953) 41 Cal.2d 855, 857-858 [264 P.2d 544]; *Estate of Perkins* (1943) 21 Cal.2d 561, 567-568 [134 P.2d 231]; *Spier* v. *Lang* (1935) 4 Cal.2d 711, 714-715 [53 P.2d 138]; *Western Electroplating Co.* v. *Henness* (1959) 172 Cal.App.2d 278, 280-281 [341 P.2d 718]; *Estate of Busteed* (1951) 105 Cal. App.2d 14, 17 [232 P.2d 881]; *Bureau of Welfare, Cal. Teachers' Assn.* v. *Drapeau* (1937) 21 Cal.App.2d 138, 149-150 [68 P.2d 998].) As is stated in the *Western Electroplating Co.* case, *supra:* "If the opposite were true, as the court in the *Spier* case observes, it would be meaningless and inappropriate to attempt to modify the judgment thus set aside. Stated otherwise, if a new trial is actually granted the court divests itself of any power to alter the findings or judgment —its jurisdiction is lost except to retry the case. . . ." (172 Cal.App.2d at p. 281.) Thus if the trial court determines to change its findings or judgment instead of retrying the case, "the proper practice is to deny the motion for new trial and, in conjunction with such ruling, to grant the alternative relief provided in said section [662]." (*Bureau of Welfare, Cal. Teachers' Assn.* v. *Drapeau, supra,* 21 Cal.App.2d at p. 149.)

██ While in the instant case, according to the minute order of January 18, 1961 (see footnote 7, *ante*), the trial court "ordered Motion for New Trial *granted*" (emphasis added) on a specified ground, nevertheless such language is immediately followed by the further order of the court that "pursuant to Sec. 662 of the Code of Civil Procedure" the judgment in favor of Avery be vacated, that judgment be entered for both defendants and that Henderson take nothing on his cross-complaint. When such order is thus read as a whole, it is clear that in ruling on the motion for new trial, the court merely intended to grant the alternative relief

Henderson "in his capacity as a defendant" has submitted a memorandum in which he claims (1) that it was not necessary for him to make a motion for a new trial since the court had broad powers under Code Civ. Proc., § 662, once *any* party did so; and (2) insofar as he was concerned as defendant the "basic effect" of the first judgment was not changed. Despite such punctilious distinction in capacities, Henderson's position before us thus becomes to some extent inconsistent.

provided for by section 662. We therefore conclude that, despite the use of the above language granting a new trial, the order of January 18, 1961, ''constituted in substance and effect an order denying the motion for new trial and granting such alternative relief.'' (*Bureau of Welfare, Cal. Teachers' Assn.* v. *Drapeau, supra,* 21 Cal.App.2d at p. 150.)[9]

In granting such relief the court, among other things, rendered a new judgment which was entered on February 10, 1961. Appeal lies only from this second judgment and not from the superseded judgment of November 23, 1960, or from the minute order of January 18, 1961, which like any other order entered before judgment is not a final and appealable order. (*Kelly* v. *Sparling Water Co.* (1959) 52 Cal.2d 628, 632 [343 P.2d 257]; *Pacific Home* v. *County of Los Angeles, supra,* 41 Cal.2d 855, 858; *George* v. *Bekins Van & Storage Co.* (1948) 83 Cal.App.2d 478, 480 [189 P.2d 301]; *Rutledge* v. *Rutledge* (1953) 119 Cal.App.2d 112, 113 [259 P.2d 78]; *O'Connor* v. *Skelton* (1961) 195 Cal.App.2d 612, 614-615 [15 Cal.Rptr. 894].) In the *Rutledge* case, *supra,* it was said: ''The rule is established that where an amended judgment is entered after proceedings on a motion for a new trial and pursuant to the provisions of section 662 of the Code of Civil Procedure, which second judgment is a material departure from the first one entered, an appeal lies *solely* from the second judgment, the first judgment thus being nonappealable. [Citations.]'' (119 Cal.App.2d at p. 113; original emphasis.) The attempted appeals of both the plaintiffs and the cross-complainant from the minute order of January 18, 1961, as well as the attempted appeals of such parties from all orders and judgments made, entered or filed in the year 1961, other than their appeals from the judgment of February 10, 1961, must be dismissed. The separate appeals from the second judgment are properly before us. (*Neff* v. *Ernst* (1957) 48 Cal.2d 628, 634 [311 P.2d 849].)

The exercise by the court of powers vested in it by section 662 is an integral part of the proceedings for a new trial. The above statute states in part: ''*In ruling on such motion* [i.e. for a new trial], in a cause tried without a jury, the court may, on such terms as may be just, change or add

---

[9]For other cases construing the trial court's order as one denying a new trial and allowing relief under section 662, although language ''granting'' a new trial was used in the order, see *Bureau of Welfare, Cal. Teachers' Assn.* v. *Drapeau, supra*; *Estate of Busteed, supra*; *Western Electroplating Co.* v. *Henness, supra*; *Roraback* v. *Roraback* (1940) 38 Cal.App.2d 592 [101 P.2d 772].

to the findings, modify the judgment, in whole or in part...."
(Emphasis added.) Such powers therefore are to be exercised
only in conjunction with a *ruling upon the motion for new
trial*. (*Treat* v. *Superior Court* (1936) 7 Cal.2d 636, 641
[62 P.2d 147]; *Bureau of Welfare, Cal. Teachers' Assn.* v.
*Drapeau, supra,* 21 Cal.App.2d 138, 149.) If the trial court
does not have jurisdiction to grant a new trial, it does not
have jurisdiction to act under section 662. (*Fong Chuck* v.
*Chin Po Foon* (1947) 29 Cal.2d 552, 554 [176 P.2d 705].)

The clerk's transcript in the instant record contains a com-
plete copy of all entries in the register of actions and a com-
plete copy of all the smooth minutes of the court for this
cause. The entries in the register disclose the following:
That on November 23, 1960, a notice of intention to move for
new trial was duly served and filed by Asgrow; that on
December 6, 1960, a memorandum of points and authorities
re motion for new trial was filed; that on January 6, 1961,
a memorandum of points and authorities in opposition to
motion for new trial was filed; and that, on January 18,
1961, a new trial was granted and the prior judgment was
vacated as we have already pointed out. The minutes of
the court show the minute order of January 18, 1961, set
forth by us above (see footnote 7, *ante*) which commences
with the words "Motion for New Trial heretofore *submitted*"
(emphasis added). The above portions of the record however
clearly establish that Asgrow's motion for new trial was
never set for hearing, no notice of hearing was ever mailed,
and that no proceedings ever occurred during or after which
the motion was submitted. They also establish that Hender-
son at no time filed a notice of intention to move for a new
trial or made any other motion attacking the judgment.

Because of this absence of any motion on Hender-
son's behalf, Avery's first contention is that the trial court
had no power to grant to Henderson any relief pursuant to
section 662. As previously stated, this relief insofar as
Henderson as a defendant was concerned, consisted in vacat-
ing Avery's judgment against him and in directing a judg-
ment in Henderson's favor. Avery further contends that the
power to grant such relief was not conferred on the trial court
by virtue of the fact that Asgrow filed its motion for a new
trial. In support of this proposition, Avery relies on *Del
Barrio* v. *Sherman* (1936) 16 Cal.App.2d 407 [60 P.2d 559]
which held that where the defendant alone moved for a new

trial, the court upon denying the motion and granting relief under section 662, had no power by amending the findings and modifying the judgment to give the plaintiff a greater judgment than he already had. No authority was cited, however, for such conclusion.

We observe that the Third District Court of Appeal in *Hontou* v. *Orvis* (1941) 42 Cal.App.2d 585 [109 P.2d 395] and another division of the Second District Court of Appeal[10] in *Warner* v. *Harris* (1948) 84 Cal.App.2d 131 [190 P.2d 21] declined to follow *Del Barrio* v. *Sherman*. In the *Hontou* case, the court denied the plaintiff's motion for a new trial and, acting under section 662 set aside the findings, thereafter making new findings claimed by the plaintiff to be more favorable to the defendant. Upholding the trial court's action, the court said: "The statute [§ 662] gives the power when a motion for new trial is made by *either* [emphasis added] party. The right to adopt other findings thereupon arises, and is not dependent upon any other or further application to the court. Appellants contend, however, that the *second* [original emphasis] findings were more favorable to defendant than the first. Assuming that this is true, there is nothing in the section which restricts the action of the trial court or which limits the scope of the second findings. The statute is a remedial one, and should be liberally construed." (42 Cal.App.2d at pp. 589-590.) In the *Warner* case, the trial court denied the defendant's motion for a new trial and thereupon made certain amendments and additions to the findings, presumably favorable to the plaintiff. Holding that such power existed under section 662, the court criticized the holding of the *Del Barrio* case as being contrary to the provisions of the above section.

We do not detect in the provisions of section 662 the restrictive character urged by Avery. It does not state that the powers thereby invested in the trial court are to be exercised only in favor of litigants who have moved for a new trial. On the contrary the court, in our view, appears to be given a broad power to do certain things "on such terms as may be just." (Code Civ. Proc., § 662.) As the court stated in *Spier* v. *Lang, supra,* 4 Cal.2d 711, 714, "[t]he obvious purpose of the statute, discerned from the language employed, was to give to the court on denying the motion for a new trial the broad power to change its findings and to modify its judg-

---

[10]*Del Barrio* is an opinion of Division One and *Warner* an opinion of Division Two of the Second District Court of Appeal.

ment and thus avoid the necessity of a new trial. This was to subserve the ends of justice and to prevent unnecessary delays in cases where the court deemed itself mistaken as to its previous view of the evidence or in the application thereto of the law.'' The section is to be liberally construed. (*Shimpones* v. *Stickney* (1934) 219 Cal. 637, 642 [28 P.2d 673]; *Bureau of Welfare, Cal. Teachers' Assn.* v. *Drapeau, supra,* 21 Cal. App.2d 138, 149.) We are therefore not persuaded to follow the holding in the *Del Barrio* case which, as this court has already stated, ''seems to us contrary both to the letter and the purpose of the section.'' (*Oliver* v. *Boxley* (1960) 181 Cal. App.2d 471, 479 [5 Cal.Rptr. 468].) While the instant case does not present the litigants in exactly the same procedural posture on new trial as were the litigants in the *Hontou* and *Warner* cases, nevertheless we feel that the underlying philosophy of those cases is determinative of the problem here. It is the purpose of section 662 to have the trial court correct previous errors so as to subserve the ends of justice. (*Spier* v. *Lang, supra.*) This necessarily implies an exercise of the court's corrective powers for the cause as a whole and not for just a part of it. We feel that the court can exercise such powers when ruling upon the motion for new trial made by any party to the action and notwithstanding that the subsequent action of the court may be favorable to a party or parties who have not so moved. We conclude therefore that the court below was not precluded from granting relief to the defendant Henderson along with the defendant Asgrow merely because Asgrow alone moved for a new trial.

We turn to consider the new trial proceedings initiated by Asgrow. As we have already stated, although properly filed and served, such motion was never noticed for hearing, heard or submitted.

The applicable statutes clearly provide for a hearing and determination of a motion for new trial. (Code Civ. Proc., §§ 660, 661.) Except as otherwise provided in section 12a of the Code of Civil Procedure, by virtue of the provisions of section 660, the power of the court to pass on a motion for new trial expires 60 days from and after service on the moving party of written notice of entry of judgment, or if such notice has not theretofore been served, then 60 days after the filing of the notice of intention to move for a new trial. If such motion is not determined within said 60-day period, or within said period as thus extended, the effect shall be a denial of the motion without further order of court.

 Section 661 of the Code of Civil Procedure provides in relevant part as follows: "The motion for a new trial shall be *heard* and determined by the judge who presided at the trial; provided, however, that in case of the inability of such judge or if at the time *noticed for hearing* thereon he is absent from the county where the trial was had, the same shall be *heard* and determined by any other judge of the same court. Upon the expiration of the time to file counter-affidavits the clerk forthwith shall call the motion to the attention of the judge who presided at the trial, or the judge acting in his place, as the case may be, and such judge thereupon shall designate the time for oral argument, if any, to be had on said motion. Five (5) days' *notice* by mail shall be given of such *oral argument, if any,* by the clerk to the respective parties." (Emphasis added.) From the foregoing it is clear that there must be a notice of hearing and that the five days' notice prescribed by the section, although referred to as notice of oral argument, is in effect the notice of the hearing required. As the court stated in *Beck* v. *Superior Court* (1942) 20 Cal.2d 77, 80 [124 P.2d 9], after referring to the same portion of section 661 quoted by us above, "In the consideration of the meaning and effect of the quoted language of section 661 it is at once observed that a motion for a new trial is not such a motion as is 'noticed for hearing' under the practice and procedure with reference to motions made on notice by one party to another. Such a motion is not set for hearing on such a notice but is set for hearing by order of court." (See also *Irons* v. *Superior Court* (1935) 10 Cal. App.2d 523, 525 [52 P.2d 553], where reference is made to "five days' notice of the time set for the hearing of a motion for new trial.")

Unless waived, the above hearing and notice of hearing of the motion for new trial are mandatory and, if such hearing is not held and notice thereof given, the court has no power to "pass on" the motion and make an order in such proceedings. (*Irons* v. *Superior Court, supra,* 10 Cal.App.2d 523—order granting new trial without notice of hearing held invalid; *Deschamps* v. *Independent Cab Co.* (1949) 94 Cal. App.2d 127 [210 P.2d 299, 897]—order granting new trial without opportunity to be heard on motion and without submission of motion held invalid; *Morris* v. *De Celis* (1871) 41 Cal. 331 and *De Gaze* v. *Lynch* (1871) 42 Cal. 362 to same effect.) If the court is without power to rule on the motion for new trial, it obviously cannot exercise the powers con-

ferred on it by section 662 of the Code of Civil Procedure, since it can only exercise these powers "[i]n ruling on such motion." (Code Civ. Proc., § 662; *Treat* v. *Superior Court, supra,* 7 Cal.2d 636, 641; *Bureau of Welfare, Cal. Teachers' Assn.* v. *Drapeau, supra,* 21 Cal.App.2d 138, 149.)

Asgrow contends that the hearing of its motion for new trial was not mandatory but was within the discretion of the court. It rests its argument largely on the words "if any" which are found in the provision of section 661 stating that "notice by mail shall be given of such oral argument, *if any,* . . ." (Emphasis added.) This indicates, according to Asgrow, that no "hearing for oral argument need be granted." This ingenious amalgam of "hearing" and "argument" exposes the fallacy of Asgrow's contention. For while the court is under no obligation to hear argument (*McGarvey* v. *Southern Pac. Mill. Co.* (1935) 5 Cal.App.2d 604, 607 [43 P.2d 354]; *Morel* v. *Simonian* (1930) 103 Cal.App. 490, 495 [284 P. 694]), it is nevertheless under an obligation to hold a hearing and give notice thereof. The *hearing* of the motion for new trial and the *argument* on such motion are not necessarily equivalents under the applicable statutes. Thus section 660 states in part: "On the *hearing* of such motion, reference may be had . . ."; "the reporter must upon request of the court or either party, attend the *hearing* of the motion . . ."; and the "*hearing* and disposition of the motion for new trial shall have precedence. . . ." (Emphasis added.) In the same vein section 661 states that the "motion for a new trial shall be *heard* and determined . . ." and in case of the inability of the trial judge to hear it "the same shall be *heard* and determined" by another judge (emphasis added). Subdivision 2 of section 166 provides that the judge at chambers may "[h]ear and determine all motions made pursuant to Sections 657. . . ." (Emphasis added.) Section 69741.1 of the Government Code, enacted in 1961, provides that a "motion for new trial . . . may, with the written consent of all parties concerned, be *heard* at any place in the State of California by the judge who presided at the trial" (emphasis added). Thus the hearing of the motion implies a broader concept than "oral argument, if any, to be had on such motion." (Code Civ. Proc., § 661.) The argument is but an incident of the hearing. The court may dispense with the argument but, unless waived, it cannot dispense with the hearing. (See generally, 3 Witkin, Cal. Procedure, pp. 2077-2078.)

Although a party may waive notice of the hearing of a motion for new trial, as for example, by his appearance at the hearing (*Anderson* v. *City Ry. Co.* (1935) 9 Cal.App.2d 205, 207 [48 P.2d 969]), no claim is made in the instant case either that notice of hearing or that the hearing itself was waived.[11] It is clear to us therefore that in the proceedings below, there was neither a hearing nor a notice of hearing in connection with the motion for new trial made by Asgrow. In such event, despite the language of the minute order to the contrary, there in fact was not, and obviously could not be, any submission of such motion to the court. We therefore conclude that the order made by the court on January 18, 1961, by which it in effect denied the motion for new trial, vacated the prior judgment and directed the entry of a new judgment was invalid and that the new judgment of February 10, 1961, entered pursuant to such order was also invalid.

Assuming *arguendo* that the motion for new trial was properly noticed for hearing and submitted and that the order of January 18, 1961, was valid, there are additional reasons why the new judgment of February 10, 1961, cannot be upheld. The 60-day period within which the court had the power to pass upon the motion for new trial expired on January 22, 1961. The court's order directing the second judgment was therefore made within such period, but the new judgment itself was signed on February 3, 1961, filed on February 9, 1961, and entered on February 10, 1961, all such acts occurring after the expiration of the 60-day period. Where, nevertheless, the order disposing of a motion for new trial and providing for additional rulings pursuant to section 662 is made within the 60-day period, it is within the contemplation of such statute and therefore permissible for the judge making such order to sign and file a new or amended judgment directed by it after such 60-day period has expired. (Code Civ. Proc., § 662; *Holland* v. *Superior Court* (1932) 121 Cal.App. 523, 532 [9 P.2d 531].) The second judgment therefore, under our present assumption, would be valid although signed, filed and entered after the expiration of the 60-day period.

[11]In fairness to the trial judge, we should state that counsel for some of the parties have indicated attempts on their part to carry out a suggestion of the court below that the motion for new trial be submitted on written memoranda without oral argument. Such matters are not in the record and presumably counsel did not fully adopt the court's suggestion. It appears that counsel for Avery had no knowledge of such suggestion and that Avery waived neither a hearing nor notice of hearing.

 However, although the court below, by its aforementioned order of January 18, 1961, vacated the prior judgment of November 23, 1960, and directed the new judgment of February 10, 1961, it did not vacate, change or add to the prior findings of November 14, 1960. The above order makes no mention of the findings in any way. Despite this circumstance, the court signed new findings of fact and conclusions of law on February 29, 1961, filed them on March 30, 1961, and directed that they be entered *nunc pro tunc* as of February 3, 1961, the date of the second judgment. The new findings were therefore signed after the expiration of the 60-day period within which the court could pass on the motion for new trial, after the second judgment of February 10, 1961, and were filed after the two notices of appeal filed on March 14, and March 16, 1961.

The record therefore establishes that the court ruled on the motion for new trial on January 18, 1961, and in conjunction with such ruling took certain action pursuant to section 662. The court, having once made its decision on the motion after (as we here assume) a regular submission thereof, exhausted its power to rule upon it and to take alternative action pursuant to section 662. (*Holtum* v. *Greif* (1904) 144 Cal. 521, 525 [78 P. 11].) Quite apart from this however, it is clear that the power of the court to make any of the above rulings expired at the end of the 60-day period prescribed by section 660. The subsequent action of the trial judge in adopting and signing a second set of findings was tantamount to an order changing and adding to the findings. As this was done after the 60-day period and was not pursuant to the order made within such period, it was in excess of the court's jurisdiction and void (*Gustafson* v. *Blunk* (1935) 4 Cal.App.2d 630, 634 [41 P.2d 953]; *Hosford* v. *Henry* (1951) 107 Cal.App.2d 765, 776 [238 P.2d 91].)

Since the 60-day period prescribed by section 660 is jurisdictional, it cannot be evaded by a *nunc pro tunc* order. (See 3 Witkin, Cal. Procedure, p. 2080.) The record does not give support to the court's direction endorsed on the second set of findings to enter them *nunc pro tunc* as of February 3, 1961. There was no clerical error made by the clerk in making any entry with respect to findings on that day. In fact there was no entry at all relating to findings on that day. It is to be noted that the *nunc pro tunc* direction was not made with reference to the first set of findings entered on November 14,

1960. Nor is there in the order of January 18, 1961, any provision with respect to new or changed findings which could support the subsequent direction of a *nunc pro tunc* entry. Asgrow argues that by such order all matters which occurred subsequent to submission of the case after the trial concluded "were nullified" and the trial court in effect took the case under submission again. We do not agree. In following the procedure authorized by section 662 the court could do any one or more of the things therein stated. It was not required to do either all of such things or none of them. (*Oliver* v. *Boxley, supra,* 181 Cal.App.2d 471, 477.) By its order, it did not vacate, change or add to the first set of findings. We therefore cannot speculate that it intended to do so or accept Asgrow's circuitous reasoning that because the court made a second set of findings that is what it must have intended to do in the first place.

Considered from another point of view, the second set of findings were signed approximately three weeks and filed over a month and a half after the entry of the second judgment on February 10, 1961. There being no indication in the record that the court was correcting a clerical error and there being no proceedings for new trial in connection with the *second* judgment, upon its entry the complete power of the court over its findings no longer existed. (*Stanton* v. *Superior Court* (1927) 202 Cal. 478, 487 [261 P. 1001]; *Hole* v. *Takekawa* (1913) 165 Cal. 372, 375-376 [132 P. 445]; 2 Witkin, Cal. Procedure, p. 1839.)

Therefore even if both the order of January 18, 1961, and the second judgment which it directed were regarded as validly made, it is obvious that such judgment would not be supported either by the second set of findings which are a nullity or by the first set of findings which are contrary and repugnant to it.

Thus examined in the light of its procedural antecedents, the second judgment of February 10, 1961, must fall. Although such judgment, like the order of January 18, 1961, its progenitor, is invalid and thus a nullity, its appealability is not thereby affected. "It has long been the general rule in this state that where the law allows an appeal from a judgment or order, it is appealable even though void." (*Phelan* v. *Superior Court* (1950) 35 Cal.2d 363, 366 [217 P.2d 951].) The proper procedure is to reverse the void judgment, rather than to dismiss the appeal from it. (*Estate of Hewitt* (1958) 160 Cal.App.2d 584, 588 [325 P.2d 113].)

However, a reversal of the second judgment presents the more complicated question of the effect of such reversal on the first judgment which the trial court ordered vacated and set aside. As we view the order of January 18, 1961, the court did *not* vacate the first set of findings and conclusions filed on November 14, 1960, and such findings are still in existence. On this appeal both Avery and Henderson urge that the first judgment be "reinstated" or "reinstituted." Presumably, according to this position, it would be sustained by the first set of findings. The above appellants however fail to specify as to what date any such reinstatement should be effective.

■ It has been held that where the action of the trial court in setting aside its original finding and judgment in favor of a plaintiff and entering new findings and judgment in favor of a defendant was within its power under section 662 of the Code of Civil Procedure, an appellate court, upon reversing the second judgment because the findings upon which it was predicated were not supported by the evidence, may not direct reinstatement of the original findings and judgment. (*Clarke* v. *Fiedler* (1941) 44 Cal.App.2d 838, 849 [113 P.2d 275].) ■ However, in the instant case, as distinguished from *Clarke* v. *Fiedler, supra,* the action of the trial court was invalid and not within the proper exercise of its powers. Our attention has not been directed to any case which provides a guideline for the precise procedural problem before us. We are not persuaded that a fair solution can be found in a general and unqualified reversal, thus adopting at least in principle the rule declared in reference to judgments vacated under section 663 of the Code of Civil Procedure that " [a]s an order reversing the order and judgment appealed from, without other direction, will leave the original conclusion of law and judgment in force, it is not necessary to make any order directing a new conclusion of law or the entry of another judgment." (*Akley* v. *Bassett* (1922) 189 Cal. 625, 649 [209 P. 576] ; see also *Dahlberg* v. *Girsch* (1910) 157 Cal. 324, 332-333 [107 P. 616].)

We think that a reinstatement of the original judgment made effective as of its date of entry on November 23, 1960, either by our express direction or as a result of a general reversal, would not be in the interests of justice. If such judgment is now reinstated as of November 23, 1960, the defendants will be denied their right of appeal therefrom, the time to appeal having long since expired. In the pro-

cedural situation now before us, where there was no order *granting* a new trial and no proceedings taken under section 663 of the Code of Civil Procedure, the defendants did not have the right to take any precautionary cross-appeal from the original judgment. (Cal. Rules of Court, rule 3.*) Indeed, as we have already pointed out, the first judgment is nonappealable, and the appeal herein lies only from the second judgment, in respect to which the defendants are not aggrieved parties. (See *Kelly* v. *Sparling Water Co., supra,* 52 Cal.2d 628, and other authorities cited *supra* therewith.) It would be in the interests of justice therefore to direct that a reentry of the original judgment be made upon the transmission of the remittitur herein to the court below. While we find no California case in point, we feel that such a direction is consonant with the general principle that where the right of appeal is suspended, an appeal may be taken within the period provided by law, after such right is restored. (3 Am.Jur., Appeal and Error, § 425, p. 144; 4A C.J.S., Appeal and Error, § 443, pp. 111-112; Freeman on Judgments, (5th ed.) § 302, pp. 594-595; *Rogers* v. *Savage* (1921) 117 Wash. 521 [201 P. 768].)

 The above disposition of the appeal before us presents the additional question whether the reentry of the original judgment will again make such judgment subject to attack by motion for new trial or other available procedure in the court below. In the light of the particular circumstances of the instant case, we believe that it should be. Fundamentally, the procedural defect here was that the parties did not have a hearing on the pending motion for new trial. If proceedings for new trial are again initiated, it will give all of the parties an opportunity to be heard thereon. It will also afford an opportunity to the trial court, should it be inclined to follow the procedure authorized by section 662, to state in some appropriate way, its reasons for so doing, rather than to leave such reasons to be gleaned from a mere comparison of the two sets of findings and the two judgments.[12] While further proceedings on new trial may be in some respects repetitious, we find nothing basically objectionable in them. For example, where the court in following the

---

*Formerly Rules on Appeal, rule 3.

[12]As pointed out above, the first set of findings found that Avery was specially injured and was damaged. The second set found that the foregoing was not true. While these appear to be antithetical findings of *fact*, we get the impression that by the second set of findings, the court actually was speaking in terms of legal conclusions rather than findings of fact.

procedure authorized by section 662 enters a modified judgment, such judgment is a new judgment and is subject to a further motion for new trial. (Code Civ. Proc., § 662; 3 Witkin, Cal. Procedure, p. 2084.)

We wish to make it clear, however, that by reinstating the original judgment of November 23, 1960, we do not in any way pass upon its merits. No appeal was, or could be, taken from such judgment. It is not before us and consequently we do not here reach its merits.

The attempted appeals of the appellants Jean Avery as administratrix of the estate of R. L. Avery, deceased, and Matt Carroll, and the attempted separate appeals of the cross-complainant Leonard Henderson, from the minute order of January 18, 1961, and from all orders and judgments made, entered or filed in the year 1961, except the aforementioned judgment made on February 3, 1961, and entered on February 10, 1961, are, and each of them is, dismissed. The aforementioned judgment entered on February 10, 1961, is reversed with directions to the trial court to reinstate and reenter the judgment made on November 17, 1960, and entered on November 23, 1960, such reinstatement and reentry to be made and to be effective as of the date of the transmission to the trial court of the remittitur issued herein, and to take any further proceedings as may be necessary or proper in accordance with the views herein expressed. The plaintiffs shall recover on their complaint costs on appeal from both defendants and the cross-complainant Henderson shall recover on his cross-complaint costs on appeal from the cross-defendant.

Bray, P. J., and Molinari, J., concurred.

The petitions for a rehearing were denied January 30, 1963, and appellants' petitions for a hearing by the Supreme Court were denied March 6, 1963.